**VOLENTINE AND LITTLETON, Contractors, a Partnership, Composed of M. O. Volentine and Earl Littleton,**

v.

**The UNITED STATES.**

No. 62–54.

United States Court of Claims.

Nov. 7, 1956.

Ras Priest, Newport, Ark., for plaintiff.

William A. Stern, II, Washington, D. C., with whom was Asst. Atty. Gen., George Cochran Doub, for defendant.

MADDEN, Judge.

The plaintiff partnership had a contract with the Government to clear the timber from the site of the reservoir which was to be created by the Whitney Dam on the Brazos River in Texas. It sues to recover alleged extra costs which it incurred because of the Government's actions, and liquidated damages assessed against it by the Government. The plaintiff says that while it was performing the contract, the Government closed the dam and thereby inundated the lower part of the plaintiff's work.

The plaintiff's contract contained a provision, lodging in the Government's contracting officer the power to decide disputes arising under the contract concerning questions of fact, giving to the contractor the right to appeal from such decisions to the head of the department, and providing that decisions so arrived at should be final. The contracting officer, upon claims made by the plaintiff, made awards which the plaintiff regarded as inadequate. It appealed to the head of the department who gave it no further relief. It now sues in this court, alleging that the departmental decision was not final because it was arbitrary, capricious, fraudulent and not based on substantial evidence.

The plaintiff's allegations are obviously intended to place its case within the coverage of the act of May 11, 1954, 68 Stat. 81, 41 U.S.C.A. §§ 321–322, which says:

"That no provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such official or his said representative or board is alleged: *Provided, however,* That any such decision shall be final and conclusive unless the same is fraudulent or ca-pricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.

"Sec. 2. No Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board."

Long before the enactment of this statute, this court and the Supreme Court of the United States has made decisions placing important limitations upon the finality provisions written into Government contracts. Cases in which the court concluded that the departmental decision was arbitrary, capricious, so grossly erroneous as to imply bad faith, or was not supported by substantial evidence, were held to be, by logical implication, not intended to be covered by the finality provision. But the Supreme Court, in United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113, held that the only situation not validly covered by the finality clause was that of actual intentional fraud perpetrated by the departmental officials.

At the instigation of contractors and their counsel, the statute quoted above was enacted. Its legislative history shows that, in general, its purpose was to restore the law to what it was generally thought to be before the Supreme Court's decision in the Wunderlich case.

In the instant case, the plaintiff introduced, before our commissioner, evidence intended by it to show that the Government had breached its contract, and that there was no substantial support for the departmental decision that it had not done so. The plaintiff then rested.

The Government declined to introduce any evidence in its defense, taking the position that the plaintiff had failed to produce the only piece of evidence which was material at that stage of the case, i. e., the record of the evidence which was before the contracting officer and the head of the department when they made their decisions adverse to the

plaintiff. The Government says that one cannot apply the derogatory language which the statute uses to the departmental decision, unless one knows the evidence on which the decision was based, which might have been very different evidence from that presented in this court.

There is logic in the Government's position. But we do not adopt it. It would require two trials in many cases involving this question. The first trial would include the presentation of the "administrative record" and its study to determine whether, on the basis of what was in it, the administrative decision was tolerable. But the so-called "administrative record" is in many cases a mythical entity. There is no statutory provision for these administrative decisions or for any procedure in making them. The head of the department may make the decision on appeal personally or may entrust anyone else to make it for him. Whoever makes it has no power to put witnesses under oath or to compel the attendance of witnesses or the production of documents. There may or may not be a transcript of the oral testimony. The deciding officer may, and even in the departments maintaining the most formal procedures, does, search out and consult other documents which, it occurs to him, would be enlightening, and without regard to the presence or absence of the claimant.

If we were to attempt to make a decision on the basis of the "administrative record" it would be a considerable task, in many cases, to gather together the pieces of that so-called record and get them all under our eyes at once. A helpful step in doing that would be to put the deciding officer on the stand and ask him what he knew when he made his decision. That step would, of course, be unthinkable.

The second trial referred to above would be the trial on the merits, with all relevant evidence admissible, whether it was in the "administrative record" or not. That trial would be necessary in every case where we decided, on the first trial, that the departmental decision was not final.

What the Government asks us to do would run counter to the traditional handling of this problem. As we have said, the law as we applied it before the Supreme Court's decision in the Wunderlich case was substantially the same as what is in the 1954 statute. It was judge-made law instead of legislature-made law. There would have been the same logical reason for dividing such lawsuits into two stages then as now. But it was never done, nor, we think, urged upon the court. We think that those who agitated for the 1954 act, and the Congress which passed it, intended that, under the statute, we should go on as we had been doing before the Supreme Court's decision. If this is a correct assumption, we should not, in order to tidy up the logic of our procedure, introduce new steps which might well have the effect of confusing the issues and delaying their decision.

■ In cases raising the questions discussed herein, the plaintiff must, in his petition, do more than repeat the derogatory language of the statute. He must allege facts which, if proved, will show that the departmental decision was intolerable, and hence was deprived of finality by the statute. Then there may be cases in which the plaintiff's own proof, before the introduction of any evidence by the Government, will show that the departmental decision, though we might disagree with it, was adequately founded. In such cases the modern substitute for a demurrer to the evidence would stop the case at that stage. In any event, we think that the procedure which worked reasonably well before the statute was enacted, should not now be discarded.

■ Although, as appears above, the Government declined to introduce any evidence at the hearing before our commissioner, we shall not foreclose it from now introducing evidence, if it wishes to do so. It was seeking to obtain a decision on an important legal question and

we will not penalize it for having done so. The case is remanded to the commissioner of this court, who will proceed with it in the regular course.

It is so ordered.

JONES, Chief Judge, and WHITAKER, Judge, concur.

LITTLETON, Judge (concurring).

I am in agreement with the conclusions reached by the majority of the court and with the reasons advanced in support of those conclusions. I should like, however, to suggest some additional grounds for concluding that the act of May 11, 1954, 68 Stat. 81, hereinafter referred to as the Wunderlich Act, does not limit the Court of Claims to a consideration of the evidence produced before the head of a contracting agency in deciding whether a decision rendered by such agency head under the standard contract disputes clause is not final because fraudulent, capricious, arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.

The interpretation placed upon the Wunderlich Act by the Government suggests that the statute is a jurisdictional act which might be said to do one of the following things: (1) change the jurisdiction of the Court of Claims in a contract case involving a disputed question of fact from jurisdiction over an original proceeding to an appellate proceeding similar to that provided for in the Indian Claims Commission Act, 60 Stat. 1049, 25 U.S.C.A. § 70 et seq., or the Administrative Procedures Act, 60 Stat. 237, 5 U.S.C.A. § 1001 et seq.; (2) change the jurisdiction of the Court of Claims in a contract case to jurisdiction to entertain a petition to review; or (3) change the jurisdiction of this court in contract cases to jurisdiction to render an administrative and not a judicial decision.

I am of the opinion that neither the language of the Wunderlich Act nor its legislative history justifies the conclusion that the jurisdiction of this court in

contract claims has been altered in any way. This jurisdiction in contract suits is found in 28 U.S.C. § 1491 (Supp. III, 1952 Ed.) which provides that the Court of Claims shall have jurisdiction to render judgment "upon any claim against the United States founded * * * upon any express or implied contract with the United States * * *."

All suits brought under section 1491 are in the nature of original proceedings based on competent evidence adduced by both parties in open court. In claims against the United States founded upon contract it is the function of this court, as it is of any court in private contract litigation, to determine the rights and liabilities of the parties in the light of all the relevant facts and under the terms of the particular contract in suit as interpreted by the court. The problems involved in interpreting the provisions of a Government contract are no different from those involved in interpreting a private contract except that where Congress by legislation has placed some limitation on the particular Government agency's authority to contract, the contract of that agency must be interpreted in the light of any such such statutory limitation.

In arguing that Congress in passing the Wunderlich Act intended to limit this court in determining the issue of the finality of the decision of a department head under a disputes provision to a consideration of the "record" on which that department head chose to base his decision, defendant relies heavily on the use of the word "review" and the expression "supported by substantial evidence" in the Wunderlich statute. Defendant also relies on certain references in House Report 1380 on S. 24, to section 10 of the Administrative Procedures Act, 5 U.S. C.A. § 1009, and to the decision of the Supreme Court in Consolidated Edison Co., v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126.

The word "review" when used in statutes does not necessarily imply review in the appellate sense. For example, section 108 of the Renegotiation Act of

March 23, 1951, 65 Stat. 7, 21, 50 U.S.C.A.Appendix, § 1218, is entitled "Review by the Tax Court;" but the section itself provides for a redetermination of the very issues decided by the Renegotiation Board and not for a review of that Board's decision. See also the various ways in which the word "review" is used in the act of July 19, 1952, 66 Stat. 792, codifying the laws relating to the Patent Office.

While the expression "supported by substantial evidence" appearing in section 1 of the Wunderlich Act is normally found only in statutes conferring appellate jurisdiction or jurisdiction of a petition to review an administrative decision, the use of such expression without more does not amount to a definition of the scope of judicial review. Furthermore, the reference in House Report 1380 to section 10 of the Administrative Procedures Act covering judicial review of decisions of agencies [1] covered by that act does not warrant our reading into the Wunderlich Act provisions contained in the Administrative Procedures Act but not appearing in the Wunderlich Act.

Section 10 of the Administrative Procedures Act provides that the *findings of fact* supporting the decision under attack on appeal may be set aside by the appellate court if those findings of fact are not supported by substantial evidence. Section 10 then provides that in making the determination that a finding of fact is not supported by substanial evidence, the appellate or reviewing court shall review the whole record or any part thereof which, as earlier provisions of that act require, has been certified to the appellate court as the record on appeal. It is *this* portion of section 10 which defines and limits the "scope of review" by the appellate court and tells the appellate court that in deciding the issue of the finality of the administrative findings of fact it may look only to the record made

at the administrative level. The Wunderlich Act contains no such provision telling the Court of Claims what evidence or record it shall consider in making its determination that the *decision* of a department head rendered in a contract dispute lacked finality because arbitrary, or not supported by substantial evidence, etc.

What then is the significance of the reference in the Report of the House Committee to section 10 of the Administrative Procedures Act and to court decisions interpreting that section? It is my opinion that Congress was merely calling attention to the various *standards* of finality provided for in the Wunderlich Act and comparing them with similar standards of finality provided for in section 10 of the Administrative Procedures Act. Nothing in the Committee Report justifies the conclusion that Congress was referring to the manner in which the Administrative Procedures Act requires appellate courts to make their determination as to whether or not those standards have been met. Furthermore, the specific reference to the Consolidated Edison Company case, supra [305 U.S. 197, 59 S.Ct. 217], was merely for the purpose of noting the Supreme Court's decision of what constitutes substantial evidence, i. e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" as distinguished from a mere scintilla of evidence, and not for the purpose of indicating to the Court of Claims that, although the act it was passing did not specifically so require, the court might look only at the evidence relied on by the department head when the court decided the issue of whether the decision of that department head was or was not arbitrary or supported by substantial evidence.

Under the Administrative Procedures Act it is clear that the appellate court

---

[1]. "Agencies" whose decisions are appealable under the Administrative Procedures Act are only those agencies which are neither parties to, nor employees of parties to, the disputes concerning which the decisions are being rendered. Decisions covered by the Wunderlich Act are decisions rendered by one of the parties to the dispute being decided or by employees of such party.

must find the "evidence" referred to in the administrative record which the Administrative Procedures Act itself requires in earlier provisions to be made and to be certified to the appellate court on the appeal. Neither the contract in suit nor any statute of which I am aware, including the Wunderlich Act, requires the making of an administrative record in connection with the rendering of a decision by a department head concerning a dispute arising under the contract. In the generally accepted sense, such an "administrative record" does not exist in connection with any contract claim sued on in the Court of Claims. Congress could have required the making of such an administrative record and some such idea was actually considered by the 82d Congress when it was studying the legislation in question. See H.R. 6404, 82d Cong., 2d Sess., to amend the Administrative Procedures Act to cover decisions rendered in Government contract disputes. In the course of the hearings, suggestions were made concerning the possibility of establishing an independent administrative tribunal to consider disputes arising under Government contracts where decisions would be judicially reviewable on appeal.

Since, presumably, all the facts and circumstances of a contract dispute are within the knowledge of the two contracting parties, the Government contracting party renders its decision on the basis of that knowledge. Congress was aware of the fact that some contracting agency heads delegate their contract obligation to reach a decision on a dispute arising under the contract to a board of employees, and that such a board then attempts to reduce that knowledge to some sort of written record. Congress also knew that other contracting agency heads render their decisions without the aid of any such "record." Congress knew how to legislatively require the making of a record, affording the parties to the dispute administrative due process, and also it knew how to make the decision based on such

a record reviewable on appeal. A reading of the Administrative Procedures Act and the Indian Claims Commission Act which do precisely that, indicates that it requires considerably more legislation than was indulged in in the Wunderlich Act.

The dissenting opinion herein, which agrees substantially with the position taken by the defendant, suggests that a plaintiff contractor should be permitted to adduce evidence in this court in addition to evidence produced before the department head *only* upon a showing that adequate opportunity to make a complete record before the department head was not afforded by the contracting agency. When Congress has wished to confer jurisdiction on a court to review a final decision of an executive agency and to provide for the usual appellate review on the basis of a record made below, and in addition has wished to provide for the taking of additional testimony upon a showing by the aggrieved party that, due to no fault of his own, he was unable to produce an adequate record at the agency level, Congress has done so in detail, as in the act of December 29, 1950, 64 Stat. 1129, 5 U.S.C. A. §§ 1031–1042. See particularly section 7 of that act. I find no such provision in the Wunderlich Act.

Certain bills were introduced in the Congresses which were considering the Wunderlich legislation and which did purport to change this court's jurisdiction over contract claims. See S. 2432, 82d Cong., 2d Sess.; H.R. 6214, 82d Cong., 2d Sess.; H.R. 6301, 82d Cong., 2d Sess.; H.R. 6338, 82d Cong., 2d Sess.; and H.R. 3634, 83d Cong., 1st Sess., all of which bills proposed amendments to the Judicial Code as it relates to the jurisdiction of the Court of Claims in contract claims.

If the Wunderlich Act does not alter or limit in any way this court's jurisdiction over Government contract claims, what then does it do? It is my opinion that the Wunderlich Act is an express statutory limitation on the right of any Government contracting agency to con-

tract for the absolute finality of its decisions rendered in connection with disputes arising under the contract, whether of fact or of law. Such statutory limitations on the authority of Government contracting agencies become by operation of law a part of any Government contract containing a so-called disputes provision whether the disputes clauses in such contracts contain the statutory language of limitation or not.[2] See Hooe v. United States, 218 U.S. 322, 31 S.Ct. 85, 54 L.Ed. 1055. The precise limitations imposed on the Government contracting agencies by the Wunderlich Act are the identical ones implied by the courts prior to the decision of the Supreme Court in the Wunderlich case when the courts were called upon to interpret the meaning of the standard form disputes clause which, by its literal language, accorded absolute finality to any sort of decision rendered by a department head on a dispute arising under the contract.

Insofar as the dispute arising under a Government contract involves a question of law, the statutory limitation in the Wunderlich Act amounts to a positive prohibition against the Government's contracting for *any* finality regarding its decisions. Insofar as the dispute involves a question of fact, the Wunderlich Act limits all Government contracting agencies' authority to contract for the finality of their decisions to those decisions which are honest, fair, accurate and supported by all the relevant facts and circumstances involved in the dispute.

I am of the opinion that because the Wunderlich Act is a statutory limitation on the authority of all Government contracting agencies to contract for the finality of their decisions on disputes arising under their contracts, that act leaves unchanged the jurisdiction of this court over Government contract claims. Furthermore, I think the act provides no basis whatsoever for requiring either plaintiff or defendant to produce or rely on the so-called record on which the head of the contracting agency chose to base his decision, required of him under the contract in suit. Insofar as that "record"[3] consists of a transcript of testimony taken before a "board" representing the head of the contracting agency concerned in the dispute, that record is simply "former testimony" which may or may not be admissible in evidence under the usual rules of evidence as the commissioner of the court may rule on the trial of the case. See Wong Wing Foo v. McGrath, 9 Cir., 196 F.2d 120. Naturally, if both parties are satisfied with that record and are willing to have the court decide the issue of finality of the decision of the department head on the basis of that record rather than on a new record made in this court, there would seem to be no objection to such a proceeding. See Langoma Lumber Corp. v. United States, D.C., 140 F.Supp. 460, affirmed 3 Cir., 232 F.2d 886.

2. In resisting the passage of this legislation, some of the contracting agencies informed the Congress in the course of committee hearings that they were prepared to amend the disputes clauses in their contracts to provide that only those decisions would be final which were not arbitrary, capricious, grossly erroneous, fraudulent or not supported by substantial evidence, and I understand that some disputes clauses now contain that language. Congress, however, noted that without legislation making such limitations on finality mandatory, any Government agency could revert to the old type of disputes clause at any time and that such old standard form disputes language would have to be interpreted by the Court of Claims and the District Courts in conformity with the interpretation of the Supreme Court of that clause in the Wunderlich case.

3. "Administrative records" and "administrative decisions" usually relate to decisions and record which an agency is *by law* required to make. In contract suits in this court the decision of the department head is not required by any statute but rather by the terms of the contract itself and the making of a record to support that decision is purely optional with the department head.

LARAMORE, Judge.

I respectfully dissent.

Because of the unsettled nature of this type of controversy, I believe the case should be referred back to a commissioner of this court for further proceedings. However, as a guide to the commissioner and the litigants in this case, I believe a discussion of the finality of the administrative decision intended under the Act of May 11, 1954, supra, would be appropriate.

I do not believe that Congress intended by the language in the Act of May 11, 1954, supra, "shall be final and conclusive unless the same is fraudulent * * *," to make the decision of the administrative board final subject only to the usual administrative review such as that provided in the Administrative Procedures Act, 60 Stat. 237, because of the lack of procedural due process afforded by the Appeals Board.

However, I believe a common sense application of the Act of May 11, 1954, supra, considering the background of the legislation and the administrative procedures available to aggrieved contractors, would be to apply the usual administrative review rule and determine the question of arbitrariness, etc., and lack of substantial evidence on the record made before an appeals board, unless the contractor alleges and proves that because of the procedures available in the Appeals Board as applied to him, he was unable to adequately present his case. That is to say, because of the failure of the Government to produce documents or witnesses or inability of the plaintiff to compel the attendance of witnesses or other procedures that would prevent plaintiff from adequately establishing material facts with reference to his claim, or if the board considered evidence not in the record. Further, he must allege and prove the additional material facts which were not before the board.

Because of the failure of the plaintiff to put the record of the Appeals Board in evidence, it is impossible for this court to determine whether the decision of the Appeals Board was arbitrary, etc., or not supported by substantial evidence. If the plaintiff desires the court to go beyond the record of the Appeals Board in deciding whether it is entitled to recover, it must amend its petition and allege and prove the facts above outlined.

I would refer the case back to a commissioner of this court in conformity with the above dissenting opinion.