**J. W. BATESON COMPANY, Inc.,**
v.
**UNITED STATES.**
No. 161-55.

United States Court of Claims.
July 16, 1958.

Paul M. Rhodes, Washington, D. C., for plaintiff.

John F. Wolf, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

LARAMORE, Judge.

This suit is brought by the J. W. Bateson Co., Inc., on its behalf and that of its subcontractor, the Texas Housing Company, for the increased costs sustained by Texas Housing when the defendant terminated the prime contract for the convenience of the Government. Under this court's decision in Donovan Construction Co. v. United States, 149 F.Supp. 898, 138 Ct.Cl. 97, certiorari denied 355 U.S. 826, 78 S.Ct. 34, 2 L.Ed. 2d 39, a prime contractor may bring suit on behalf of the subcontractor where the contract between those parties does not negate liability for increased costs occasioned by the acts of the Government. The evidence in this case does not show that the contract between Bateson and Texas Housing contained any exculpatory provisions and therefore this action may be maintained.

On February 19, 1953, plaintiff entered into a contract with the defendant, acting through the Public Housing Administration, hereafter referred to as the PHA, to furnish the labor, equipment, materials and services necessary for the construction of 430 individual prefabricated 3-bedroom dwelling units, nine laundry buildings, and one community building at Camp Breckenridge, Kentucky, complete with all utility connections and site improvements. Following the award of the contract, plaintiff issued a purchase order to Texas Housing to furnish and deliver to the site the structures called for under the prime contract. The shipping schedule called for the completion of deliveries by July 17, 1953.

On Friday, May 8, 1953, the defendant, pursuant to a provision of the contract, terminated all work in connection with the project and so notified the plaintiff. Plaintiff in turn notified Texas Housing to cease production with respect to the prefabricated buildings for the Camp Breckenridge project. At this time there were 81 dwelling units erected at Camp

Breckenridge and 44 additional units had been shipped by Texas Housing to the job site. Immediately thereafter, negotiations were entered into between plaintiff and the Government contracting officer for the reinstatement and continued fabrication of the terminated buildings. On Monday, May 11, 1953, the defendant ordered the 44 units not yet erected at Camp Breckenridge to be shipped to Camp Pickett, Virginia, where plaintiff had a general contract calling for the erection of 250 units. Plaintiff was also instructed to obtain the remaining 206 units from Texas Housing for shipment to Camp Pickett which left a balance of 99 units to be cancelled. Later, the 99 units were reinstated and shipped to Piketon, Ohio, for installation at another PHA project there.

Texas Housing completed delivery of the units for the Camp Pickett project on July 29, 1953, and made final shipment of the 99 units to Piketon on October 10, 1953.

It is plaintiff's contention that Texas Housing suffered increased costs in the production of the prefabricated units which increases were caused by the defendant's termination and partial reinstatement of the contract. It is claimed that the extension of the delivery period from July to October 1953, prevented Texas Housing from maintaining continuous manufacturing operations which resulted in standby expenses and make ready and starting costs. A claim for these costs was presented to the PHA and was denied by the director of the Atlanta field office. The determination of the director was appealed under the disputes clause of the contract to the head of the agency which again resulted in a denial of the claim for work stoppages. Plaintiff was, however, allowed $8,506 on account of storage expense incurred by Texas Housing with respect to the 99 units bound for Piketon. Plaintiff has not received the $8,506 award and there is also due and owing it the sum of $6,296.30 pursuant to change order G–8.

The Commissioner of this court who heard, received, and carefully evaluated the evidence in this case, found that plaintiff has failed to substantiate its claim that Texas Housing suffered additional costs due to work stoppages, or otherwise, as a result of any action on the part of the defendant. The details showing a failure of proof by plaintiff on this issue are to be found in the trial commissioner's findings which we adopt. The action of the head of the agency in denying plaintiff's claim is final under the circumstances. Volentine & Littleton v. United States, 145 F.Supp. 952, 136 Ct.Cl. 638; Fehlhaber Corp. v. United States, 151 F.Supp. 817, 138 Ct.Cl. 571, certiorari denied 355 U.S. 877, 78 S.Ct. 141, 2 L.Ed.2d 108.

Plaintiff is entitled to recover $6,296.30 under change order G–8, and $8,506 on account of the claim of Texas Housing for storage expense. Judgment will be entered for the plaintiff in the amount of $14,802.30.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.