**H. L. YOH CO., Inc.**
v.
**UNITED STATES.**
No. 435–55.

United States Court of Claims.
April 7, 1961.

Thomas S. Weary, Philadelphia, Pa., for plaintiff. Sanford D. Beecher, and Duane, Morris & Heckscher, Philadelphia, Pa., were on the briefs.

Martin E. Rendelman, Chevy Chase, Md., with whom was Asst. Atty. Gen. William H. Orrick, Jr., for defendant.

LARAMORE, Judge.

Plaintiff sues to recover the difference in dollars between the overhead rate as fixed in a "time and material" contract and the overhead rate actually encountered during performance thereof.

On June 15, 1952, plaintiff and defendant entered into a time and material contract for the changing and conversion of drawings and parts lists maintained by defendant at its Detroit Arsenal on automotive equipment. A time and material contract was entered into because the number of drawings and parts lists involved were not ascertained, nor could an accurate estimate be made except at a prohibitive cost.

At the time the contract was negotiated and signed, it was contemplated by the defendant that the project would be one of total conversion which would include all drawings and parts lists at the Detroit Arsenal relating to automotive equipment. After the work had been in progress for several months it became evident that many of the drawings were obsolete. It was thereupon determined that such drawings would be eliminated. Accordingly, by letter dated March 17, 1953, the contracting officer issued a directive changing the program from a policy of total conversion to one of selective conversion. This necessarily created a reduction in volume.

The contract provided for a maximum of $5,000,000 to be expended on the project. However, the total amount actually expended was $3,371,980.43. It is as a result of this curtailed expenditure that the plaintiff alleges his overhead expenses were proportionately increased. On March 15, 1954, plaintiff presented a claim for an adjustment in the overhead percentage fixed in the contract. This request was denied by the contracting officer in a letter dated March 31, 1954.

On April 27, 1954, plaintiff appealed to the Secretary of the Army from the decision of the contracting officer. This appeal was denied by the Armed Services Board of Contract Appeals by decision dated July 21, 1955.

On November 23, 1955, plaintiff filed its petition in this court and the case was referred to a trial commissioner. By agreement of the parties, and with the approval of the commissioner, the trial was limited to the issues of law and fact relating to the right of the plaintiff to recover.

When a contractor enters into a time and materials contract he agrees to furnish the labor and equipment necessary to fulfill his obligations at a prescribed rate. The rate to be charged for direct labor can be precisely predetermined at an hourly rate or any acceptable measurement. However, the rate for nonproduction personnel such as owners, officers, clerical workers, salesmen, and others must of necessity be estimated. This rate is referred to as overhead or burden rate. It is reasonable to assume that this rate is not merely conjecture but is determined by some intelligent process. Plaintiff alleges, and the commissioner so found, that in this in-

stance the contractor relied on the volume of work anticipated in the project. The Arsenal personnel orally informed representatives of the plaintiff that it was expected to be a five million dollar program. The plaintiff estimated that up to that time in the year his burden rate was 32 percent. Based on the increased volume of work anticipated under the proposed contract, the plaintiff calculated that he could perform the work at a burden rate of 25.97 percent, and submitted his bid accordingly. It is apparent that in accepting a bid that included a lower burden rate, the defendant was placed in a better position than it would have been in had the contract provided for a burden rate of 32 percent. Defendant admits as much but contends that the plaintiff is bound by the terms of the written contract. Admittedly, defendant may not have accepted plaintiff's bid had it contained a burden rate of 32 percent, but that is not the issue. The only issue to which this court addresses itself is whether the unilateral reduction in the volume of work under the terms of a partially executed contract creates liability in the party ordering the reduction if it results in increased costs to the other party. We are of the opinion that it does. This Court has previously held that the Government is liable for increased costs resulting from a change in volume from the estimated volume given to the contractor as a basis for computing its bid. In Fehlhaber Corporation v. United States, 1957, 151 F. Supp. 817, 825, 138 Ct.Cl. 571, 584, certiorari denied, 355 U.S. 877, 78 S.Ct. 141, 2 L.Ed.2d 108, we stated:

" * * * Plaintiff had a right to rely on the Government's specifications and drawings and the Government is bound by any assertions made therein notwithstanding the fact that it was stated that that data would be for information only."

Perhaps a case more factually similar to the instant case is Peter Kiewit Sons' Company v. United States, 1947, 74 F. Supp. 165, 109 Ct.Cl. 517. In that case, plaintiffs were three contractors who entered into a contract for the grading of runways at an airfield. Tremendous amounts of fill were required for the grading. This fill was to be obtained from three areas in the following amounts: area one, 700,000 cubic yards; area two, 1,600,000 cubic yards, area three, 2,300,000 cubic yards. The plaintiffs prepared their estimate on that volume with a different price for each area. The prices computed by the plaintiffs were 31.392, 51.23, and 29.77 cents per cubic yard respectively. Plaintiffs were then advised that a composite bid for the three areas would have to be submitted. They then computed a weighted average and arrived at a price of 37.476 cents per cubic yard. It is readily apparent that the contractor stood to profit from areas one and three but would lose money on area two. While the work was in progress the Government notified plaintiffs that the amount of fill from area three would be reduced by 750,000 cubic yards. The plaintiffs complained that this would increase their unit costs and that an equitable adjustment should be made on the contract. This court agreed. In other cases, Ruff v. United States, 1942, 96 Ct.Cl. 148; Virginia Engineering Co., Inc., v. United States, 1944, 101 Ct.Cl. 516; Loftis v. United States, 1948, 76 F.Supp. 816, 110 Ct.Cl. 551, to cite but a few, the court allowed recovery where there was a mistake either by the Government or by both. In the instant case there was no mistake. Instead, there was a unilateral reduction in volume by the defendant for its own purpose. The defendant clearly had the right to make this reduction under the terms of Section 2 of the standard Government supply contract (finding 28) but they are obliged to pay for increased costs occasioned by the change.

The defendant argues that the plaintiff may not recover because it has failed to prove that it sustained a loss. We find this argument devoid of merit. If a contractor bids on a contract intended to provide a million dollars in profit but because of some unilateral action on the part of the other party he, in fact, makes

a profit of 50 cents, can it be denied he was damaged even though clearly he realized a profit? It is in regard to this damage we direct the question of liability. There can be liability even though the contractor has actually realized some profit rather than an actual loss.

Defendant further contends that the plaintiff should be denied recovery for failure to exhaust his administrative remedies for two reasons. First, the plaintiff failed to present a claim for adjustment to the contracting officer within the 30-day period allowed by the changes clause of the contract (finding 7(c)). Second, plaintiff is presenting a new theory for recovery which was not considered by the Board.

In considering defendant's first contention it must be conceded that plaintiff was notified of the change by directive dated March 27, 1953, and that they did not present their request for an adjustment until March 15, 1954. However, even though plaintiff knew that defendant intended to change from a program of complete conversion to one of selective conversion, it is not shown that they were aware that this would result in less than five million dollars being spent on the project. When it became evident that less would be expended, they promptly presented a claim for adjustment which was denied. A timely appeal was then made and it produced the same result.

The defendant then contends that the plaintiff's theory of recovery before the Board was based on the mutual mistake of the parties and that a new theory, not available to the Board, is being presented here, thus determining that plaintiff has failed to exhaust his administrative remedy. This argument has been before at least one District Court and this court on previous occasions with conflicting results. In the District Court it has been held that the review by

that court shall consist solely of a review of the administrative record and not a trial *de novo*. Mann Chemical Laboratories, Inc. v. United States, D.C., 174 F.Supp. 563. However, it has been consistently held in this court that a review of an administrative decision shall not be limited by a review of the record, as it appeared before the agency, but that additional evidence may be presented in a trial *de novo*. Volentine & Littleton v. United States, 1956, 145 F.Supp. 952, 136 Ct.Cl. 638; Fehlhaber Corporation v. United States, supra. Our position since these decisions has never wavered, as we explained in Carlo Bianchi and Company v. United States, Ct.Cl., 169 F.Supp. 514, 517, decided January 14, 1959:

"In our opinion in Volentine & Littleton v. United States, 145 F. Supp. 952, 136 Ct.Cl. 638, holding that the trial in this court should not be limited to the record made before the contracting agency, but should be *de novo*, we recognized that there were logical weaknesses in our position. We concluded, however, that the intent of Congress in enacting the Wunderlich Act was in accord with our conclusion, and we adhere to that conclusion in this case."

By stipulation, this proceeding has been limited to the decision of the question of liability. Our conclusion is that, as the result of the very substantial curtailment of volume which resulted in increased overhead costs to the plaintiff, the defendant is liable. Judgment will be entered to that effect. The amount of the plaintiff's recovery will be determined pursuant to Rule 38(c) of the Rules of this court, 28 U.S.C.A.

It is so ordered.

REED, Justice (Retired), sitting by designation and JONES, Chief Judge, and DURFEE and MADDEN, Judges, concur.