Pee Cuexam :
Plaintiff, a former civilian employee of the Government, seeks retirement pay from the time of his separation from the federal service by reduction-in-force in 1954. The first count of his petition asserts that he was entitled at that time to disability retirement; the second count alleges that he had rendered 25 years of creditable service as a Government employee and was therefore entitled to a longevity annuity at the time of his involuntary separation. Defendant moved for summary judgment on both counts; plaintiff cross-moved for summary judgment on count II. The case was referred to trial commissioner W. Ney Evans, pursuant to Rule 37 (e), for his recommendation of conclusions of law. The commissioner has submitted an opinion and a recommended conclusion. He would find for the defendant on Count I and for the plaintiff on Count II. Plaintiff accepts the adverse recommendation on Count I and supports the favorable recommendation on Count II. Defendant has sought review of the part of the opinion relating to Count II and of the recommended conclusion of law on that count. Oral argument has been had, and the court has considered the briefs.
The court agrees fully with the commissioner’s recommendation and opinion as to Count I, and adopts that part of the opinion as the basis for judgment on that count. The defendant’s motion for summary judgment is granted as to Count I, and that count of the petition is dismissed.
With respect to Count II, the court agrees with the commissioner’s conclusion and is in general accord with the grounds of his reasoning. The relevant portion of the Federal Personnel Manual[1] provided that, with respect to when-actually-employed employees:
Only actual periods of service of employees appointed on a “when actually employed” basis may be credited, if the employee is merely carried on the rolls and called in for occasional duty. However, when the service is full-time employment, except for administratively authorized periods of inactivity for such reasons as weather conditions, lack of work, or lack of funds, or for administratively authorized leave or furlough re *771 quested by the employee, such service may be credited under the same rules as other civilian service. * * *
“Full-time” employment was defined by the Manual as covering those employees “regularly scheduled to work the number of hours and days required by the administrative workweek for their employment group or class.”[2] As Commissioner Evans shows, any realistic appraisal of plaintiff’s work record would necessarily disclose that — at least for a more-than-sufficient period to give him the additional 20 days of creditable service he needs to qualify — plaintiff clearly came within the Civil Service Commission’s own standard for those when-actually-employed employees whose service is to be credited (for retirement purposes) on a calendar year basis. The court places its decision favorable to plaintiff on this failure of the Commission to follow its own regulations as they apply to the admitted facts of plaintiff’s case. That action was unlawf ul and must be set aside as wholly unsupported. If the Commission had been guided by its regulations, properly read, it would have been required by the undisputed facts to rule that plaintiff had more than 25 years of creditable federal service and was entitled to an annuity.[3]
On Count II of the petition, therefore, defendant’s motion for summary judgment is denied and the plaintiff’s cross-motion for summary judgment is granted. Judgment is directed for plaintiff on his claim for a separation annuity. The amount of recovery will be determined pursuant to Rule 38(c).
OPINION OP COMMISSIONER
Sylva V. Dove began his Government service in 1926, at age 20, as a farm laborer, seasonally employed, at a wage *772 of $3.50 per diem, w.a.e. (when, actually employed). His employment in 1926 extended oyer a period of 6 months, from April 15 through October 15. In 1927 he was again employed for 7 months, from April 1 through October 31, at $3.75 per diem, w.a.e.
On April 9, 1930, he was again appointed to the same position, at the same wage ($3.75 per diem), w.a.e., for an “unlimited” period, and continued in the position to July 1, 1934, when his status was changed from “permanent” to “temporary” for the stated reason that—
* * * Because of curtailment of funds his services will only be needed intermittently during the fiscal year 1935. * * *
The evidence contains no record of the extent (if any) to which his employment during fiscal 1935 was intermittent, except that, on the basis of total days worked between April 9,1930, and July 31,1936, the breaks in his w.a.e. employment could not have been very extensive.
On July 1, 1935, his status was restored to “permanent,” with a notation that he had been serving as a farm laborer since April 9, 1930, assisting in general farm, orchard, and garden work, and that his services in this connection would be required for an indefinite period. Under this record he continued working, at a wage of $3.75 per diem, w.a.e., through July 31, 1936.
On July 23, 1936, the Superintendent of Arlington Farm recommended that plaintiff’s salary status be changed “from w.a.e. per diem, to per annum,” because—
* * * The nature of Ins assignment is such that his services are required continuously, and it is believed his salary should be on a per annum basis.
The change was made, effective August 1, 1936.
Plaintiff continued in employment as a farm laborer on a per annum salary ($1,200) from August 1, 1936, through October 15,1941, when he resigned “without prejudice,” and was immediately given a probational appointment (effective October 16, 1941) as a guard for Public Roads.[4] He re *773 mained in this position until Ms separation by reduction in force on November 1,1954.
Sometime in 1953 (possibly earlier), plaintiff’s health began to fail. Between July 1953 and October 1954, he was absent from his job on sick leave for a total of 416 hours (52 days). On September 29,1954, he applied to the Civil Service Commission for disability retirement.
At about this same time (September 1954) Public Eoads decided to discontinue part or all of its guard service by reduction in force.
In connection with plaintiff’s application to the Civil Service Commission for disability retirement, Ms physician advised the Commission that plaintiff had been under Ms care for approximately a year, that he was suffering from a variety of pulmonary and stomach disorders, that he “finds it very difficult to be gainfully employed,” and that guard duty “represented maximal work activity.”
On October 14,1954, plaintiff was examined by a physician designated by the Civil Service Commission, who reported that—
Individual is considered incapacitated for other than light physical work because of pulmonary emphysema. It is considered that the individual is not totally disabled for efficient service as a guard. There is no evidence by physical examination of cirrhosis. Other gastrointestinal study is considered indicated.
Meanwhile, Public Eoads had initiated procedures for reduction in force of its guard service, and plaintiff was one of the men listed for such separation. However, because of plaintiff’s pending application for disability retirement, the agency stayed its hand to enable plaintiff to hear from his application.
On October 20,1954, the Chief of the Medical Division of the Civil Service Commission reported to the Commission that, in his opinion, “claimant is not totally disabled for useful and efficient service as a guard.” Thereupon, the Commission, by letter dated October 26, 1954, notified plaintiff that his application for disability retirement had been rejected, and added:
*774 * * * According to information on file in your case, yon have rendered over twenty-five years of service. * * *
Enclosed with the Commission’s letter was an application for separation annuity.
Two weeks later, by Notification of Personnel Action dated November 9, 1954, plaintiff was advised that he had been separated from the service as of November 1, pursuant to reduction in force.
On December 1, 1954, plaintiff applied to the Civil Service Commission for an immediate life annuity based upon his years of creditable service and his involuntary separation from the service.
On January 14, 1955, the Civil Service Commission advised plaintiff that his total Government service, computed under the Civil Service Eetirement Act, amounted only to 24 years, 11 months, and 10 days, wherefore he failed to qualify for the annuity.
By his suit plaintiff seeks, in two counts, the judgment of this court (1) that at the time of his separation he was totally and permanently disabled for useful and efficient service, wherefore the action of the Civil Service Commission in denying disability retirement to him was arbitrary, capricious, unsupported by substantial evidence, and unlawful; and (2) that, having rendered 25 years of creditable service as an employee of the United States prior to his involuntary separation (not for cause), he is entitled to the annuity provided by statute.
After the suit was filed, and because of questions as to whether or not plaintiff had exhausted his administrative remedies, his attorney requested the Civil Service Commission to “give further consideration to the matter of Mr. Dove’s entitlement (1) to an annuity for disability * * * and (2) alternatively, to an immediate life annuity * * * from the effective date of his separation from government service.” The Commission accepted the attorney’s letter as “a request for relief under Section 29.16 (e) of the Commission’s Kegulations,” and forwarded the case to the Board of Appeals and Beview for further consideration.
*775 On August 29, 1961, the Chairman of the Board of Appeals and Review advised plaintiff’s attorney as follows:
* * * The Board of Appeals and Review has completed a careful study of both cases, including the representations submitted in support of the appeal. It is the determination of the Board that the medical information does not provide a basis for a conclusion that Mr. Dove was totally disabled for useful and efficient service as Guard on November 1,1954, when he was separated from that position by reduction in force. Therefore, as total disability within the meaning of the Retirement Act is not shown, the previous decision of the Commission’s former Retirement Division, issued on October 26,1954, is considered to have been correct and is hereby affirmed by the Board.
On January 14,1955, the former Retirement Division found that Mr. Dove had the following WAE (when actually employed) service.

Period Calendar WAE time time worked WAE equivalent to calendar time (SIS days p.a.

4/16/26-10/15/26_ 6 mos_ 145 days_ 5 mos. 17
4/1/27-10/31/27_ 7 mos_ 168 days_ 6 mos. 13 days.
4/9/30-7/31/36_ 6 yrs., 3 1,781 days., mos., 22 5 yrs., 8 mos., 9 days.
Totals 7 yrs., 4 mos., 22 days. 6 yrs., 8 mos., 9 days.
On April 16, 1937, the Comptroller General advised the Civil Service Commission (16 Comp. Gen. 927) that only actual periods of service of employees appointed and paid on the basis of “when actually employed” who are otherwise entitled to retirement benefits may be included in “length of service” for the purpose of computing retirement annuity.
WAE service is credited on the basis of service actually rendered unless it is established that a regular tour of duty was administratively determined in advance or that the appointment had been for contemplated full-time employment. It is the determination of the Board that it is not established that Mr. Dove’s WAE service included a regular tour of duty administratively determined in advance, or that his appointments had been *776 for contemplated fulltime employment. Therefore, Mr. Dove’s periods of WAE employment are properly credited on the basis of actual days of service. Accordingly, it is the finding of the Board that the previous decision of the Bureau of Retirement and Insurance issued on January 14, 1955, is correct and hence the same is hereby affirmed.
By letter dated September 7, 1961, plaintiff’s attorney requested (1) reconsideration by the Board and (2) review by the Commission if the Board upheld its previous rejection of plaintiff’s applications. The Board thereupon considered the representations made by plaintiff’s attorney, reaffirmed its prior decisions, and passed the matter to the Civil Service Commission. On December 8,1961, the Commission advised plaintiff’s attorney that the “Commissioners have completed a careful study of Mr. Dove’s case and find that “both decisions of the Board of Appeals and Review should be upheld.
Defendant has moved for summary judgment on both counts of the petition.
With respect to Count I, defendant urges the principles that this court will not review the merits of an adverse action where there has been compliance with procedural requirements[5] and that absent allegations of arbitrary and capricious action and facts to support them, the decision of the Civil Service Commission is final.[6]
With respect to Count II, defendant urges that the petition fails to state a claim upon which relief can be granted “because it avers no arbitrary and capricious action by the Commission, no wrongful action, and no violation of any statutory or procedural requirement whatsoever.”
Plaintiff opposes defendant’s motion for summary judgment on Count I, asserting that there exist genuine issues of material fact (specifically, whether or not plaintiff was permanently and totally disabled at the time of his application for disability retirement). On Count II, plaintiff has filed a cross-motion for summary judgment, founded on the contention that the action of the Civil Service Commission in refusing to give plaintiff full credit for his w.a.e. service *777 was contrary to tbe statute and tbe regulations, and therefore unlawful.
With respect to defendant’s contention that Count II fails to state a cause of action upon which relief can be granted because of its failure to allege arbitrary or capricious action on the part of the Commission, plaintiff says that Count II alleges facts which, if proved, reflect a clear violation of the Civil Service Retirement Act; that it constitutes a claim founded upon an act of Congress within the meaning of 28 U.S.C. § 1491; that defendant has not asserted, nor can it establish, that plaintiff can prove no set of facts in support of his claim which would entitle him to relief; and that defendant has fair notice of what the plaintiff’s claim is and the grounds upon which it rests.
On this point, plaintiff’s brief continues:
A petition “should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Conley v. Gibson, 855 U.S. 41, 45-46 (1957). All the rules of this court require is a short and plain statement of the claim sufficient to give the defendant fair notice of what the plaintiff’s claim is and the grounds upon which it rests. Ibid., at 47. And, Rule 8(b) of the Rules of this Court provides that “All pleadings shall be so construed as to do substantial justice.”
* * * Finally, in this connection, even were Count II of the petition technically deficient, the plaintiff submits that the relief sought by the defendant should be denied. Rule 18 of the Rules of the Court of Claims provides that pleadings may be amended by leave of Court “which shall be freely given when justice so requires * * This rule is designed to effectuate the principle that insofar as possible cases should be decided upon their merit rather than upon technicalities. Copeland, Motor Co. v. General Motors Corp., 199 F.2d 566 (5th Cir. 1952). Amendments should be liberally allowed, especially where the defendant is not prejudiced thereby. See Tahir Erik v. Glenn L. Martin Co., 116 F.2d 865, 870-871 (4th Cir. 1941). Assuming, ar-guendo, that there is an imperfection m Count II of the petition, the plaintiff submits that leave to amend, not dismissal, would here be the appropriate remedy.
*778 Defendant’s reply brief cites the facts that on April 30, 1962, plaintiff was again employed by the Bureau of Public Roads as a Wage Board Laborer, at a wage of $1.95 per hour; that in applying for the job, plaintiff stated that he then (April 23,1962) had no “physical handicap, chronic disease or other disability”; that a medical examination of plaintiff prior to and in connection with such employment resulted in a certification of “Very good health”; and that plaintiff has worked at this employment, consisting of “arduous general laboring duties,” for a period of at least 10 weeks, with only 1 day of sick leave. Because of these facts, when considered with the prior record, defendant contends (1) that plaintiff was not totally disabled in 1954; (2) that there is no merit to the contention that a genuine issue of fact exists on this score; and (3) that, in any event, “even if any reasonable doubt existed on Count I, it is wholly and irrevocably resolved in defendant’s favor by plaintiff’s own subsequent acts and admissions' * * * and that plaintiff has mooted his own case” on both counts.
In the Conclusion of its reply brief, defendant again argues that Count II of the petition “fails to state a claim affording relief because of its failure to allege arbitrary and capricious action by the Commission * * The reply brief does not attempt to counter plaintiff’s argument, cited hereinabove, that plaintiff’s pleading was sufficient to advise defendant of the nature of the claim. On the contrary, it argues specifically that the action of the Commission in determining plaintiff’s creditable service, and in rejecting his application for retirement on the basis thereof was altogether reasonable and not in any sense arbitrary or capricious.
The reply brief of plaintiff reiterates his earlier contentions (1) that the existence of genuine issues of fact under Count I renders summary judgment improper and (2) that plaintiff is entitled to summary judgment on Count II because (a) plaintiff’s w.a.e. service is creditable under (i) the statute and (ii) the regulations; and (b) the Commission’s action was unlawful.
With respect to plaintiff’s reemployment by the Bureau of Public Roads in 1962, his reply brief asserts that while *779 the recovery of bis health and his reemployment might affect the measure of his recovery, the facts that he was able to work and was at work in 1962 do not affect his right to relief from arbitrary, capricious, and unlawful action in 1954.
The writer agrees with plaintiff that neither the recovery of his health nor his reemployment by Public Roads suffices, ipso facto, to remove his claims from the realm of justiciable controversy. If he should be entitled to relief under Count I of the petition, any amount payable under a disability retirement would be reduced by the recovery of his health. If he should be entitled to recover under Count II (assuming he remains in court on that count), any amount payable under the 25-year separation retirement would be reduced by his resumption of Federal employment.
The answer to the question whether Count II states a claim upon which relief can be granted is not so simple. The “clear violation” by the Commission of the Civil Service Retirement Act, upon which plaintiff relies, is not so clear when consideration is extended beyond the statute to the regulations. Absent establishment of such a clear violation, plaintiff must fall back upon action by the Commission which was arbitrary, capricious, or so grossly erroneous as to imply bad faith, as the basis of his attack upon the Commission’s action. His pleading, in Count II, is devoid of any such allegations.
The procedural points urged by plaintiff in extenuation of any possible “technical” deficiency in this regard (liberal construction and amendment of pleadings) are valid as far as they go. To them might be added the statement in Conley v. Gibson, 355 U.S. 41 (cited by plaintiff supra), that (p. 48):
The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.
The foregoing statement is equally applicable to the Rules of the Court of Claims, which were patterned upon the Federal Rules.
*780 However, Rule 9 (b) of the Court of Claims provides that: “In all averments * * * of action alleged to be arbitrary, capricious, or so grossly erroneous as to imply bad faith, the circumstances constituting * * * arbitrary, capricious, or erroneous action shall be stated with particularity.” Plaintiff’s brief contains no mention of this provision. This court has held that a “bare allegation of arbitrary action is not sufficient to sustain a petition against a motion for summary judgment.” National Electronic Laboratories, Inc. v. United States, 148 Ct. Cl. 308, 317 (1960), citing Volentine and Littleton v. United States, 136 Ct. Cl. 638, 643 (1956). If the bare allegation of arbitrary action, without particularity, is insufficient, can a petition which depends upon proof of arbitrary action be sustained against a motion for summary judgment where even the conclusory allegation has been omitted ?
In the opinion of the writer, an affirmative answer to this question, in relation to the present case, is warranted by the allegations of Count II of the petition. As the court said, in Volentine and Littleton, supra, “* * * the plaintiff must, in his petition, do more than repeat the derogatory language * * *. He must allege facts which, if proved, will show that the departmental decision was intolerable, and hence deprived of finality * * *.” Likewise, in National Electronics, supra, the court said: “If plaintiff means to say that the Board acted arbitrarily in making so extensive a price revision as it made, plaintiff alleges no facts which, if proved, would support that averment.” In the instant case plaintiff has, in his Count II, alleged facts which, if proved, would support an averment of arbitrary and capricious action. Hence, while his pleading is devoid of the conclusory allegation of arbitrary action, it is not devoid of particularity with which to support such an allegation if it had been made.
Under the circumstances, the considerations urged in his brief in extenuation of “technical” deficiency are pertinent. Coupled with the fact that it is clear from defendant’s briefs that defendant has, from the outset, been fully advised of the nature and scope of the claim set forth in Count II, even to the point of defending the Commission’s action, in the reply brief, against the charge of arbitrary and capricious action, the inherent liberal policies of the Rules in relation to plead *781 ing should prevail. Consideration of the Count II claim on its merits should not be denied because of the deficiency in pleading. If, upon such consideration, it appears that plaintiff is entitled to prevail, he should be permitted to amend his pleading. See Equitable Trust Co., et al. v. United States, 140 Ct. Cl. 260 (1957).
The prayer for relief in plaintiff’s petition asks (1) for a money judgment[7] and (2) “for such other and further relief as the nature of the case may require and to the court may seem just and proper.”[8]
Whereas plaintiff’s attorney presented his client’s case to the Civil Service Commission with a request for determination that plaintiff was entitled to an annuity on one basis or the other (i.e., disability or separation after 25 years of service) , indicating a willingness to accept either, his demand upon this court is not so restricted. Ostensibly, he is in position to demand of this court such a full measure of devotion as to determine his client’s rights in sequence. Such a course, if followed to its logical conclusion, would raise a host of questions not mentioned in the briefs.[9]
The writer’s view of the case makes it unnecessary to borrow trouble.
The rejection by the Civil Service Commission of plaintiff’s application for retirement by reason of disability was not arbitrary or capricious. Neither was it lacking in support by substantial evidence. Plaintiff’s own physician certified only that “* * * guard duty represented maximal work activity,” and added “if this type of work is no longer avail *782 able be should be discharged for reasons of permanent disability.” The medical examiner of the Civil Service Commission, on the basis of separate and independent physical examination of plaintiff, similarly certified that “individual is considered incapacitated for other than light physical work” [but] “* * * is not totally disabled for efficient service as a guard.”[10] The statute permitted retirement only of one “whe is found by the Commission to have become disabled.”[11] The Commission did not so find in plaintiff’s case, and there is not sufficient evidence to challenge the integrity of the finding that was made.
The result of the Commission’s action in rejecting plaintiff’s application for disability retirement was harsh. The brunt of it fell upon a man whose formal education ended with the 6th grade and who was in ill health. By medical determination the only employement of which he was physically capable was guard duty, or its equivalent, and the work in which he was then engaged was in process of termination. Absent knowledge on his part of other, similar job opportunities, or facilities to guide him in job replacement, the result was, for him, grim indeed.
The Civil Service Commission had all of these facts be-for it.[12] The presumption therefore is that normal, human compassion induced the Chief of the Claims Section of the Retirement Division, in advising plaintiff of the rejection of his application for disability retirement, to volunteer the following:[13]
According to information on file in your case, you have rendered over twenty-five years of service. If such is the case and you are involuntarily separated from the *783 service not by removal for cause on charges of misconduct or delinquency, you are eligible to file for retirement under the optional provision of the Eetirement law. Under this provision, the annuity otherwise payable is reduced by 3% for each year that you are under 60. There is inclosed an application for annuity, Standard Form 2801, which you should file through your .employing agency if upon reconsideration you wish to exercise your right to optional retirement.
When the Civil Service Commission came to analyze plaintiff’s creditable service as the basis for 25-year separation retirement, it found only 24 years, 11 months, and 10 days of creditable service. As hereinabove noted, the shortage of 20 days resulted from the reduction of 7 years, 4 months, and 22 days of calendar time, during which plaintiff was in w.a.e. employment, to 6 years, 8 months, and 9 days of creditable service.[14] He received calendar time credit for the 18 years, 3 months, and 1 day of employment between August 1, 1936, and November 1, 1954, when he was on per annum salary.
The reduction of 7 years, 4 months, and 22 days of calendar time to 6 years, 8 months, and 9 days of creditable time resulted from dividing 313 (the arbitrary w.a.e. equivalent of calendar time) into the number of w.a.e. days actually worked.
As previously noted, the Board of Appeals and Review of the Civil Service Commission explained to plaintiff’s attorney that the Commission had been advised by the Comptroller General that—
* * * only the actual periods of service of employees appointed and paid on the basis of “when actually employed” who are otherwise entitled to retirement benefits may be included in “length of service” for the purpose of computing retirement annuity. * * *[15]
The Board then added:
WAE service is credited on the basis of service actually rendered unless it is established that a regular tour of duty was administratively determined in ad- *784 vanee or tbat tbe appointment had been for contemplated full-time employment. It is the determination of the Board that it is not established that Mr. Dove’s WAE service included a regular tour of duty administratively determined in advance, or that his appointments had been for contemplated full-time employment. Therefore, Mr. Dove’s periods of WAE employment are properly credited on the basis of actual days of service. Accordingly, it is the finding of the Board that the previous decision of the Bureau of Retirement and Insurance issued on January 14,1955, is correct and hence the same is hereby affirmed.
A literal reading of the foregoing excerpt indicates that the Board rejected plaintiff’s claim because of what it considered a failure of proof.[16]
Disregarding for the moment plaintiff’s seasonal employment in 1926 and 1927, the record shows that during his w.a.e. employment extending from April 9, 1930', through July 31, 1936, he was employed on 1,781 days. By calendar time this period covered 6 years, 3 months, and 22 days. Plaintiff was credited (on the basis of 313 days per annum) with 5 years, 8 months, and 9 days, reflecting a difference of 7 months and 13 days.
During that time (April 9, 1930, through July 31, 1936) there were 2,306 calendar days. Since the 313 days of w.a.e. equivalent of calendar time reflect 365 calendar days minus 52 Sundays, deduction would appear to be warranted of 329 Sundays from 2,306 calendar days, leaving 1,977 potential workdays, of which plaintiff worked 1,781, or 90 percent. There were, during the period, 47 holidays. If these are deducted, the potential workdays are reduced to 1,930, and plaintiff’s work time accounts for 92.28 percent. The Saturday half-holiday 'became effective in 1931.[17] Deduction of 120 days (%[18] of 280 Saturdays) would leave 1,810 potential workdays; and plaintiff worked 1,781 days (98.4 percent).
At what point may it be surmised than an employee (w.a.e. or not) is on “a regular tour of duty administratively de *785 termined in advance” ? Is there not a presumption of orderly-administration, whereby an employee who was on the job 90 percent (or more) of the time over a period of better than 6 years would be assigned “a regular tour of duty administratively determined in advance” ?
What proof is required that plaintiff’s “appointments had been for contemplated full-time employment”?
Plaintiff was appointed farm laborer on Arlington Farm on April 9, 1930, for an “unlimited” period, his services being desired “for general unskilled farm, orchard and garden experimental and maintenance work; handling building materials, unloading coal, etc., in connection with the maintenance and operation of the farm.” He retained this status until July 1, 1934, a period of 4 years, 2 months, and 22 days (calendar time). His status was reduced to temporary for fiscal 1935, for budgetary reasons, but was restored to “indefinite” on July 1,1935, with the notation that “it is desired to keep him on the Farm roll indefinitely.” Thirteen months later, on August 1, 1936, his status was changed from w.a.e. to per annum employment, because “the nature of his assignment is such that his services are required continuously * * *.”
The plain inference from the foregoing summary, and from the fact that he worked 1,781 days between April 9, 1930, and July 31, 1936, is that he was, in all respects save the paper record, a full-time, per annum employee during all of that time. Surely there can be no doubt but that his “indefinite” appointment of July 1, 1935, “contemplated full-time employment.”
Calendar time credit for 13 months (from July 1, 1935, to July 31,1936) would add 56 days (Sundays) to his period of creditable service. Adding 56 days to the 24 years, 11 months, and 10 days of credit already on record, would give him 25 years, 1 month, and 6 days of creditable service, thereby entitling him to the separation annuity.
The pertinent provisions of the Civil Service Retirement Act follow:
* * * Any officer or employee [covered by the retirement legislation] after having rendered at least twenty-five years of service * * * shall, upon involuntary separation from the service not by removal for cause on charges of *786 misconduct or delinquency, be paid an immediate life annuity * * *.[19]
* * * Tbe aggregate period of service * * * shall be computed from the date of original employment * * *.[20]
The Federal Personnel Manual defined “full-time” and “intermittent” employees as follows :[21]
Full time employees are those regularly scheduled to work the number of hours and days required by the administrative workweek for their employment group or class.
Intermittent employees are those employed on an irregular or occasional basis whose hours or days of work are not based on a pre-arranged schedule and who are compensated only for the time when actually employed or for service actually rendered.
In rejecting plaintiff’s claim because “it is not established that * * * [his] WAN service included a regular tour of duty administratively determined in advance, or that his appointments had been for contemplated full-time employment,” the Civil Service Commission (adopting the decision of its Board of Appeals and Beview) placed an unwarranted premium upon a formula of words, observing the form but disregarding the substance of its own regulations. This decision was, in the opinion of the writer, so grossly erroneous as to imply bad faith.[22]
In accordance with the opinion of the Court and a memorandum report of the Commissioner as to the amount due thereunder, it was ordered on July 15, 1963, that judgment for plaintiff be entered for $6,443.40.

 Chapter R5, page R5-24, “Retirement: Service Credit, Deposits, and Redeposits” (May 1, 1954).

 Chapter R1-33 (March 13, 1954). The regulation also provided that “Intermittent employees are those employed on an irregular or occasional basis whose hours or days of work are not based on a pre-arranged schedule and who are compensated only for the time when actually employed or for service actually rendered.”

 The original petition claimed that the failure of defendant to pay the separation annuity was contrary to law; at the oral argument the plaintiff was permitted to add the aUegations that the decision of the Civil Service Commission was arbitrary, capricious and so grossly erroneous as to imply bad faith.

 (Initially Public Roads Administration of the Federal Works Agency; later, Bureau of Public Roads, Department of Commerce.)

 Citing Hofflund v. United States, 154 Ct. Cl. 66.

. Citing Hofflund v. United States, supra, and Eclov v. United States, 137 Ct. Cl. 341.

 Any money judgment to 'which plaintiff might be entitled would, of course, be subject to computation; and such computation could, presumably, be made by either the Civil Service Commission or the General Accounting Office.

 “In the instant case, this particular relief is not only covered by the facts alleged by plaintiffs and admitted by defendant, but is encompassed in the prayer for ‘such other and further relief as the nature of the case may require and to the Court may seem just and proper.’ ” Equitable Trust Co., et al. v. United States, 140 Ct. Cl. 260, 264 (1957).

 If, as plaintiff contends, there is a genuine issue of fact in Count I, should that issue be determined by trial before consideration of Count II ? If plaintiff was, in fact, totally disabled in October 1954, and therefore entitled to disability retirement, would this right preclude him from receiving the separation retirement (assuming 25 years of creditable service therefor) ? If it be determined that both decisions by the Civil Service Commission were arbitrary, would plaintiff have a choice? Or would that right which first attached in point of time prevail?

 The medical examiner’s additional comment, that “other gastrointestinal study Is considered indicated,” is sufficient to raise a Question in the mind of a layman as to the thoroughness of his examination, but the comment could be quite misleading without medical evaluation.

 Pertinent regulations provided that the employee “must have become totally disabled for useful and efficient service in his position or in any other position of the same grade or class.”

 On September 28, 1954, Public Roads advised the Commission that: “Assignment to another position has not been offered to Mr. Dove due to the fact that Reduction-in-Eoree notices are in effect Oct. 12th, 1954, which abolish all Guard positions in this section and Mr. Dove is in this group.”

 Every law student has debated the standard of care assumed by the Good Samaritan, whereas the Levite, who passed by on the other side, assumed no burden at all.

 TMs is a difference of 8 months and 18 days.

 16 Comp. Gen. 927, 931 (1937). The question before the Comptroller General pertained to the extent to -which leaves of absence could be considered in computing the length of service of w.a.e. employees.

 As intimated below, examination of tbe evidence suggests tbat here tbe Levita was speaking, not tbe Good Samaritan.

 Act of March 3,1931; 46 Stat. 1482.

 Tbe “half-holiday” actually represented only a reduction from 7 hours to 4 hours.

 U.S.C. (1952 Ed.) 691(e).

 5 U.S.C. (1952 Ed.) 707.

 Chapter R1-3,3, revisions approved March 13, 1954, TS 459.

 Inherent in this phrase, “so grossly erroneous as to imply bad faith,” is an unfortunate connotation. Although bad faith is implied, rather than found, the implication itself sounds as if bad faith, in the sense of conscious wrongdoing, was somewhere lurking in the background. In the present instance no one has impugned the motives of the Civil Service Commission or its Board of Appeals and Review, much less charged conscious wrongdoing. The fault lies in carelessness and neglect: the failure of the Commission (or Board) to penetrate form and consider substance. Therein lies the error which was so gross as to deprive the decision of its integrity; or, in the words of Volentine and Littleton, supra, “* * * the departmental decision was intolerable, and hence was deprived of finality * *