### JEFFERSON CONSTRUCTION COMPANY

v.

### The UNITED STATES.
### No. 218–64.

United States Court of Claims.
Nov. 10, 1966.

---

Philip M. Cronin, Boston, Mass., for plaintiff. Robert B. Patten, Needham, Mass., and Withington, Cross, Park & Groden, Boston, Mass., of counsel.

Edward Weintraub, Washington, D. C., with whom was Acting Asst. Atty. Gen. J. William Doolittle, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

## OPINION

PER CURIAM:

■ This case was referred to Trial Commissioner Roald A. Hogenson with directions to make his recommendation for conclusions of law on plaintiff's motion and defendant's cross-motion for summary judgment. The commissioner has done so in an opinion filed February 21, 1966. Plaintiff sought review of the commissioner's opinion and recommendation for conclusions of law to which defendant filed a response and the case was submitted to the court on oral argument

by counsel. Since the court is in agreement with the opinion and recommendation of the trial commissioner with a minor modification, as hereinafter set forth, it hereby adopts the same as modified as the basis for its judgment in this case. The court emphasizes that in reviewing a trial commissioner's opinion passing upon a factual determination of a Board of Contract Appeals (or similar contractual agency) the court will not, except in exceptional circumstances, consider points and record references which should have been presented to the trial commissioner but were not. Therefore, without prejudice to the administrative payment of the amount awarded to plaintiff by the Board, plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted and plaintiff's petition is dismissed.

## OPINION OF COMMISSIONER *

HOGENSON, Commissioner:

This is a suit on a bid contract awarded by the Department of the Air Force to plaintiff, dated June 30, 1960, designated AF 19(617)–1888, pursuant to which plaintiff, a Massachusetts corporation engaged in the construction business, undertook for the contract price of $343,000 to furnish all labor, equipment, and materials and to perform all work required to remodel and rehabilitate 10 airmen dormitories at Westover Air Force Base, Massachusetts, in strict accordance with the provisions, specifications, schedules, drawings, and conditions of the contract.

This case is before the court on cross-motions for summary judgment, with supporting briefs,[1] based solely on the record of proceedings (filed herein) of the Armed Services Board of Contract Appeals (ASBCA No. 8247) on plaintiff's appeal from the adverse decision of defendant's contracting officer on plain-

tiff's claim. After hearing the testimony of witnesses for the parties, receiving in evidence proffered exhibits, and considering the briefs of the parties, the Board in a written decision, dated March 31, 1964, allowed a minor part but otherwise denied plaintiff's appeal, as hereinafter related.

The contract required plaintiff to commence work on July 11, 1960, and to complete on November 2, 1960. The contract work was not completed until January 23, 1961. Plaintiff was allowed extensions of time and was not assessed liquidated damages for late performance.

Count One of plaintiff's petition herein alleges that defendant breached the contract:

> * * * by its failure to make the job site available to petitioner, by its failure to vacate the dormitories on or before the date for commencement of work, by its unreasonable delay in ordering changes in the work, by its unreasonable delay in issuing clarifications of contract documents, by its unreasonable delay in issuing change orders, by its unreasonable delay in approving samples of materials submitted to respondent by petitioner for approval, by respondent's interruption of the orderly sequence of petitioner's work and by respondent's failure to occupy the dormitories and accept the work in a timely fashion.

and that because of such breaches, plaintiff was unable to complete the contract work until January 23, 1961, and that such breaches caused plaintiff to incur extra costs and damages in the sum of $32,590.

Count Two of the petition alleges with respect to the same contract performance that defendant unreasonably delayed plaintiff in the following respects:

> * * * making the job site available, vacating the dormitories, order-

---

* The opinion and recommended conclusion of law are submitted pursuant to order of the court under Rule 54(b). The facts are stated in the opinion.

1. Plaintiff's motion for summary judgment was filed July 30, 1965, and defendant's opposition thereto and its cross-motion on August 27, 1965, and thereafter plaintiff failed to file any response to defendant's submissions.

ing changes in the work, issuing clarifications of the contract documents, issuing change orders, approving samples of materials, and occupying the building. Petitioner says that the cumulative effect of these delays interrupted the orderly sequence of its work and caused petitioner to incur substantial costs.

Count Two further alleges that plaintiff gave timely notice of all delays to the contracting officer, that the contracting officer extended the contract completion date until January 23, 1961, but by decision, dated April 30, 1962, denied plaintiff's claim for extra costs as a result of the delays in the sum of $32,590, that plaintiff took a timely appeal to the Armed Services Board of Contract Appeals, and that such Board by decision, dated March 31, 1964, ruled that plaintiff was entitled to an allowance for unreasonable delay because of defendant's failure to make the buildings available on July 11, 1960, but otherwise denied plaintiff's claim. Plaintiff's petition alleges in Count Two that the Board's decision is not supported by substantial evidence and is erroneous as a matter of law. Regarding the assertion of lack of substantial evidence, the petition wholly fails to allege any particulars in support thereof.

In addition to standard Changes and Disputes articles, the contract contained a Suspension of Work article as follows:

SP 1–12 Suspension of work

The Contracting Officer may order the Contractor to suspend all or any part of the work for such period of time as may be determined by him to be necessary or desirable for the convenience of the Government. Unless such suspension unreasonably delays the progress of the work and causes additional expense or loss to the Contractor, no increase in contract price will be allowed. In the case of suspension of all or any part of the work for an unreasonable length of time, causing additional expense or loss, not due to the fault or negligence of the Contractor, the Contracting Officer shall make an equitable adjustment in the contract price and modify the contract accordingly.

An equitable extension of time for the completion of the work in the event of any such suspension will be allowed the Contractor: Provided, however, That the suspension was not due to the fault or negligence of the Contractor.

Before the Board, both parties presented their evidence and contentions in their briefs, covering every facet of plaintiff's delay-damage claim asserted in either count of the petition herein, and the Board rendered its decision on the merits, all on the theory that an equitable adjustment in the contract price would be made if it were established that actionable delays by the defendant caused increased costs in plaintiff's contract performance. No other theory of entitlement to recovery was presented to the Board.

Despite the fact that there was no evidence before the Board that a written or oral order for suspension of work was ever issued by defendant's contracting officer, the Board's written opinion basically assumes that it was authorized by the above-quoted Suspension of Work provision to award an equitable adjustment in the contract price for actionable delays on the part of the defendant. In fact, the Board did award such an adjustment of $150 for one day of delay resulting from defendant's failure to make the buildings available on July 11, 1960. The Board otherwise denied plaintiff's claim. In its opinion, the Board set forth detailed and ultimate findings of fact, and discussed at length the testimony and evidence in its record.

Years prior to the proceedings before the Board on plaintiff's claim, the Army Board of Contract Appeals (later merged into the ASBCA) had ruled in the Appeal of Guerin Bros., BCA No. 1551, decided November 30, 1948,[2] that in the case of a contract having a Suspension of Work

<hr>

2. This is an unreported decision which has been repeatedly followed and applied by the ASBCA. See John A. Johnson &

Sons, ASBCA No. 4403, decided February 11, 1959, 59–1 BCA Decisions 8913, 8921, and Board decisions therein cited.

article like the one above-quoted, the absence of an express order to suspend did not deprive the Board of jurisdiction of a claim for increased costs attributable to unreasonable delays caused by the Government. The Board in that case adopted its constructive suspension of work principle, ruling that

> * * * where an action by the Government through its authorized representatives in the performance of the contract "unreasonably delays the progress of the work and causes additional expense or loss to the Contractor" [See Suspension of Work article, supra] it becomes the duty of the contracting officer, under contracts identical with that now under consideration, to provide for such delay by a suspension order as contemplated by paragraph GC–12, supra, [Suspension of Work article] and we shall in this case treat that as done which should have been done if and when the facts so warrant. * * *

The Board expressly recognized this ruling to be an extension by analogy of the constructive changes principle established in previous Board rulings to the effect that where the contracting officer has in fact made a change in the specifications of a contract, without issuance of a change order or modification as required by the Changes article, the claim would be treated on appeal to the Board as if the proper change order had been made.

In Morrison-Knudsen Co. v. United States, 345 F.2d 833, 837, 170 Ct.Cl. 757, 763 (1965), the court ruled that as to plaintiff's claim on which factual determinations had been made by the Interior Board of Contract Appeals, on which claim the Board could have granted complete relief on the principle of constructive changes under the Changes clause of the contract, plaintiff was limited on such a claim to a review of the administrative record under the standards prescribed by the Wunderlich Act. The court recognized that the predominant issue decided by the Board was a question of law, i. e., the interpretation of the contract provisions, but ruled that plaintiff could not have a trial de novo in this court by asserting its claim here on a theory of breach of contract.

The rationale of the court's ruling on the Morrison-Knudsen claim presented to the Board under the constructive changes theory is by analogy applicable to plaintiff's delay-damage claim which was presented to the Board and decided on the merits on the principle of constructive suspension of work.

The foregoing analysis was included in the order of the trial commissioner, filed June 10, 1965, which granted defendant's motion, filed May 25, 1965, opposed by plaintiff in its response, filed June 8, 1965, and the trial commissioner thereby limited proceedings in this case to a review of the administrative record pursuant to the standards prescribed by the Wunderlich Act, 41 U.S.C. §§ 321, 322 (1964 ed.). Plaintiff was ordered by the trial commissioner to file its motion for summary judgment and opening brief. plaintiff requested review of the trial commissioner's order, which was denied by the court on July 2, 1965.[3]

A photostatic copy of the Guerin Bros. decision was obtained from the ASBCA and attached to the trial commissioner's order (filed herein June 10, 1965) limiting proceedings to a review of the administrative record pursuant to the Wunderlich Act.

3. In Cannon Constr. Co. v. United States, 319 F.2d 173, 179, 162 Ct.Cl. 94, 105 (1963), the court stated that the Suspension of Work clause (like that in subject case) converts a claim for delay damage "into a matter properly for determination and payment under and pursuant to the contract in the form of an equitable adjustment." However, the contracting officer in effect did "order" suspension of work in that case by expressly granting plaintiff's request therefor. In any event, the decisive reason for dismissal of plaintiff's petition was application of the doctrine of accord and satisfaction.

In T. C. Bateson Constr. Co. v. United States, 319 F.2d 135, 158, 160, 162 Ct. Cl. 145, 185, 187 (1963), the court stated that Government action in taking steps which it knew would cause a resulting labor strike brought the contract Sus-

■ Plaintiff divides its brief into two parts, (1) that as alleged in Count One of the petition, defendant breached its contract with plaintiff, and (2) as alleged in Count Two, the decision of the ASBCA is not supported by substantial evidence. There is no reason for the court to reconsider its denial of review of the trial commissioner's ruling that the issues are limited to a review of the administrative record in accordance with the standards prescribed by the Wunderlich Act. See T. C. Bateson Constr. Co. v. United States, n. 3 supra. Accordingly, plaintiff's contentions concerning breach of contract are rejected. In any event, plaintiff's arguments on breach of contract are broad general contentions which are so lacking in detailed factual allegations that no plausible cause of action on that theory is apparent.

The remaining issue in this case is whether the Board's findings of fact are supported by substantial evidence, 41 U.S.C. § 321 (1964 ed.). Plaintiff challenges the ultimate finding of the Board that plaintiff.

* * * failed to show that the contracting officer violated any contractual duty to the appellant [plaintiff herein] or that the work was suspended or unreasonably delayed except with respect to the delays which occurred as a result of the Government's failure to make the buildings available on 11 July 1960.

As to that one day, the Board held that plaintiff was entitled to an allowance of $150, but otherwise denied the appeal.

The basic contention of the plaintiff is that "the Board lost sight of the combination of all of the individual events and circumstances which unreasonably delayed, hindered and obstructed the plaintiff from completing the work by the date scheduled in the contract." Plaintiff complains that the Board examined a number of individual and separate events and circumstances which arose during the course of the work under the contract, with a view to seeing how and to what extent each one delayed the performance by plaintiff. Plaintiff contends that it "serves no useful function to analyze in minute detail the various factual circumstances comprising each item causing delay" because it was "not isolated incidents that caused delay but the overall impact of all the incidents." Plaintiff asserts that "no evidence was offered and no proof was made of any delay caused by the plaintiff," and that "all of the evidence affirmatively pointed to the fact that all of the delay was caused by the government." To a meager extent, plaintiff cites testimony and evidence before the Board in support of its contentions, and challenges some of the specific findings, as hereinafter related. In the main, however, plaintiff's brief is a general declamation of protest, not a specification of errors of the Board in its findings of fact.

■ The unchallenged statements of fact of the Board are accepted as correct, as plaintiff has the burden to specify the facts and circumstances contained in the Board's record, which make the Board's decision lacking in substantial evidence. Volentine & Littleton v. United States, 145 F.Supp. 952, 954, 136 Ct.Cl. 638, 643 (1956); River Constr. Corp. v. United States, 159 Ct.Cl. 254, 269 (1962). Plaintiff's petition is devoid of the required particulars, and its brief in support of its subject motion is so sketchy in its treatment of the extensive factual determinations of the Board that it is of no practical help to the court in determining the validity or lack of validity of plaintiff's broad contentions. Even though defendant undertook in its brief to cite and discuss testimony and evidence supporting the Board's factual determinations in the various categories of alleged delays, plaintiff filed no response thereto,

pension of Work article (substantially like that in subject case) into operation, and that the contracting officer should have suspended the work, and an equitable adjustment should have been made under such article. The court held that defendant was not liable for breach of contract, but rather under the Suspension of Work article.

and thus has failed to join issue with the defendant on the basic question presentable in this case. Cf. Hunt & Willett, Inc. v. United States, 351 F.2d 980, 983, 168 Ct.Cl. 256, 260–261 (1964).

The Board reasonably divided the alleged unreasonable delays of the Government into four categories: (1) Evacuate the buildings on schedule; (2) Clarify in a timely manner errors and ambiguities in the contract drawings and specifications (including timely decisions on changes); (3) Promptly approve samples of materials submitted by plaintiff; and (4) Promptly accept the buildings on completion. These categories were the very ones employed by plaintiff's counsel, both in his opening statement before the Board, and in his brief submitted to the Board.

## EVACUATION OF BUILDINGS

On the evacuation of buildings, plaintiff cites the testimony of its president that plaintiff planned to employ sufficient crews to perform the required work on all ten buildings simultaneously, both on the demolition of partitions, ceilings, and other items to be removed, and on the framing of new partitions, new corridors, new rooms, new ceilings, etc., with the object to start the subtrades, i. e. plumbing, heating, sheet rock, etc., in all of the buildings at the same time, and thereafter successively perform all work, such as painting, etc., simultaneously in all buildings until completion of the project. Without addressing itself to the Board's detailed analysis of the facts and circumstances attendant to the evacuation of the buildings, or even mentioning the Board's ultimate finding that (except for the $150 allowed for one day) plaintiff failed to show that its costs were increased during the delay period (July 11 to July 26, 1960), plaintiff completes its presentation of this area of dispute by the following statements in its brief:

This plan was disrupted on the very first scheduled day of work, under the contract, July 11, 1960. When the plaintiff's men arrived they found that the buildings had not been vacated by the government and they, therefore, could not proceed (Tr. 18–19). In fact, the buildings were never completely vacated by the government (Tr. 27) and they were turned over to the plaintiff "in dribs and drabs." (Tr. 26) Because of this plaintiff could not put its original plan into operation.

The Board's finding that the buildings were made available, 4 on July 20, 2 on July 21, 2 on July 22, and the remaining 2 on July 25, 1960, is supported by the testimony of defendant's inspector and notations contained in his daily reports for the pertinent period. With respect to the delay in furnishing the buildings from July 11 to 26, 1960, the Board's ultimate finding is that (except for $150 for the first day) plaintiff failed to prove increased costs for that period. Plaintiff has failed to allege or specify in what respects such finding is not supported by substantial evidence, and such finding is therefore final.

The Board further found that plaintiff could have commenced full-scale operations by July 21, 1960, the date when six of the ten buildings were available, and further found:

* * * the appellant has failed to show that the delay in making the buildings available had any adverse effect on the over-all efficiency of the appellant's operations or that it had any adverse effect on appellant's costs over and above the amount we have already allowed.

In this connection, the Board alluded to the testimony of plaintiff's superintendent that even after the buildings were available he could not organize the anticipated five crews because of lack of labor. In general context, not by way of specification of error in the last-quoted finding, plaintiff comments that the testimony as to the inability of the plaintiff to hire enough laborers was concerned only with one day, i. e., July 26, 1960, and it is true that plaintiff's superintendent had reference to that date in stating that plaintiff could not obtain labor and staging

materials to build scaffolding to undertake full-scale operations as originally planned. However, the nature of his testimony is that such shortages were due to existing economic conditions, not that they were like a local thunderstorm that commenced and terminated the same day. Moreover, the testimony fairly indicates that labor shortages remained a continuing problem on the project, and the reasonable inference is that they had existed for some time prior to July 26, 1960. The fair inference from the testimony of plaintiff's superintendent is that labor shortages prevented plaintiff from ever invoking its ideal plan to advance work on all buildings simultaneously. As noted by the Board, plaintiff's plumbing subcontractor had considerable difficulty in obtaining labor sufficient to accomplish the rough plumbing in time, and delays in that respect would obviously defer the work of the finish trades.

## CLARIFICATION OF AMBIGUITIES AND DECISIONS ON CHANGES

On the matter of timely clarification of errors and ambiguities in the contract drawings and specifications, the Board found that plaintiff's president discovered several areas of ambiguity before he prepared plaintiff's bid, that he did not call them to the contracting officer's attention until after the bids had been opened and plaintiff had been informed it was the successful bidder, and that at a conference held prior to the signing of the contract, plaintiff's president told the contracting officer that clarification of numerous details would be needed. The parties then agreed to discuss the problems at a pre-work conference to be held July 12, 1960. By letter dated July 6, 1960, plaintiff furnished a list of 22 questions, and at the July 12 meeting, raised 9 more, confirmed by plaintiff's letter dated July 14, 1960. By letter dated July 20, 1960, another question was raised by plaintiff, making a total of 32. The Government replied to plaintiff's three letters by a letter dated July 28, 1960, enclosing a copy of a memorandum dated July 21, 1960, which contained answers to each of the 32 questions raised by plaintiff. The Board analyzed in detail the questions and answers of the parties and also related the subsequent negotiations between the parties concerning changes to the drawings and specifications. By letter dated October 6, 1960, plaintiff requested an increase in the contract price of $25,000 for changed work, and at an October 19 conference with defendant, agreed to accept $10,908.-39. A formal modification in that sum, dated November 9, 1960, was transmitted to plaintiff on November 14, 1960. After an exhaustive analysis of the details of the clarifications provided and the changes ordered, the Board found with respect to each of the changes, either that the contracting officer did not unreasonably delay his decision thereon, or that there was no proof that the contract work was delayed by lack of a prompt decision. With respect to the clarifications of the drawings and specifications, the Board reasonably concluded as follows:

1. All of the questions raised by the appellant on or prior to 20 July 1960 requiring an interpretation of the contract were answered by the Government within a reasonable time (i. e., by memorandum dated 21 July 1960 transmitted to the appellant under date of 28 July 1960);

2. The appellant was obligated under the terms of the "Changes" and "Disputes" articles to proceed with the work in accordance with such interpretation even though it did not agree with the interpretation and considered that it was entitled to an equitable adjustment under the "Changes" article; and

3. The appellant has failed to prove that the work was delayed by the lack of interpretation of ambiguous plans or specifications.

Plaintiff's attack upon the Board's findings on timely issuance of clarifications and timely decisions on changes is as general in nature as its other arguments. Plaintiff states that the changes were not agreed to until October 19,

1960. As stated above, this was the date on which the parties in conference settled the amount of the modification of the contract price for the changes. Plaintiff asserts without detailing the evidence that plaintiff could not proceed with the work on such changes until October 19, 1960. However, most of the changes arose out of plaintiff's questions concerning the meaning of the drawings and specifications, and were covered by defendant's answers supplied July 28, 1960. Plaintiff was obligated to proceed in accordance with those written instructions as required by the standard Changes article, and thereafter press any dispute concerning entitlement to an equitable adjustment in the manner provided by the Changes and Disputes articles of its contract. The occasion for the other changes arose from time to time during the period of contract performance. All changes were lumped together and incorporated in the formal modification dated November 9, 1960, and transmitted to plaintiff on November 14, 1960, after the parties had agreed in the October 19, 1960 conference on the amount of the price increase. Plaintiff's superintendent testifed that 95 percent of the work covered by the formal modification was completed by the time plaintiff received it on November 14, 1960. The Board stated that it was not convinced that delay in the issuance of the formal order actually interfered with the contract work, and cited the testimony of the chief engineer of Westover Air Force Base that practical decisions were made as needed in the field to avoid delay.

Plaintiff's only specification of error by the Board on the change issue is set forth in its brief as follows:

An example of the thinking of the Board can be seen in the matter of the plywood insulation in the stairwells. The Board admits that there was a delay caused by the government (Op. 15) but finds that there was no evidence that this delay "interfered with other work." Obviously, it must have interfered with the plywood work.

The citation is to a paragraph of the Board's decision, dealing with only one of a number of items discussed by the Board on the overall issue of timeliness of decisions on changes, and that one paragraph is as follows:

The seventh item related to the method of installing plywood in the stairwells (Tr. 40–41). The parties were in disagreement as to whether the plywood for the stairwells should be installed with a gypsum wall backup as contended by the appellant or directly on the studs as contended by the Government. The appellant's witness testified that the question was not clarified promptly but did not testify that the alleged late decision interfered with other work.

Aside from the fact that plaintiff wholly fails otherwise to specify errors in the Board's findings on changes, this lone attack is superficial and without merit on the overall issue of Government-caused delay.

Plaintiff has failed to demonstrate that the Board's analysis of the testimony and evidence and its findings on the timely issuance of clarifications of specifications and decisions on changes are not supported by substantial evidence.

## APPROVAL OF SAMPLES

On the matter of alleged delays in approval by the defendant of samples of materials submitted by plaintiff, as required by the contract, the Board found as follows:

The appellant introduced an exhibit (Appellant's Exhibit 1) which showed in tabular form the dates of requests for approval and/or rejections, together with the number of days required by the Government to indicate such approval and/or rejections. The parties stipulated that the information shown on this exhibit was accurate.

The time required by the Government (exclusive of transmittal time) varies from a low of 5 days to a high of 28 days. Appellant's president testified that the contracting officer had

informed him at the pre-work conference (or sometime during the course of the work) that "it would take 10 days to process any and all submissions." (Tr. 49) We do not reach the question of whether the appellant would be entitled to rely upon a general estimate that the Government would need only 10 days to approve materials, because the appellant failed to identify a single instance where the work was delayed because of the lack of approval.

Plaintiff's contentions are that in the face of the contracting officer's statement to plaintiff's president at the pre-work conference, that on the matter of approval of materials, it would take 10 days to process any and all submissions, various items required more than 10 days for approval, as follows:

| Items: | Days |
|---|---|
| Fire extinguishers | 20 |
| Interior wood trim | 13 |
| Foundation ventilators | 20 |
| Gas water heater | 19 |
| Finish hardware | 12 |
| Hollow metal doors & frames | 28 |
| Safety switches & circuit breakers | 12 |
| Interior door sample | 19 |
| Materials for dry wall installation | 14 |
| Metal toilet partitions | 16 |
| Bulletin boards & fire extinguisher cabinets | 16 |
| Ceramic wall & floor tile | 16 |
| Front entrance railings | 19 |
| Hardware | 22 |
| Lighting fixtures | 20 |
| Toilet wall exhaust fans | 25 |
| Painting materials | 20 |
| Fire alarm system | 19 |
| Floor drain | 18 |
| Asphalt tiles | 21 |

Plaintiff correctly derives these items and number of days for approval from the exhibit in evidence, cited by the Board in its above-quoted language, and stipulated as accurate by the parties. It is noted that such exhibit shows that a number of plaintiff's submissions were approved in 10 days or less. Although the Board refrained from making a finding on the matter, the prospective assurance of the contracting officer that all submissions would be approved within 10 days, does not reasonably establish that on any one submission, the expiration of more time would establish ipso facto an unreasonable delay on the part of the defendant. However, the basic difficulty with plaintiff's position is its complete failure to specify wherein the Board erred in its finding that on submission and approval of samples, plaintiff "failed to identify a single instance where the work was delayed because of lack of approval." Here again plaintiff presents no analysis of the evidence but relies on its general contention that the whole period of extension of contract performance time (November 2, 1960 to January 23, 1961) was caused by actionable delays on the part of the defendant.

### ACCEPTANCE OF BUILDINGS

On the matter of the timely acceptance of the buildings on completion of the contract work, the Board found as follows:

This brings us to the last item in the appellant's claim, i. e., that the Government failed to accept the buildings within a reasonable time after completion. According to the record, the procedure followed for the transfer of responsibility of the buildings was for the Government to make a final inspection and to prepare a list of deficiencies. This list of deficiencies was furnished to appellant. According to the appellant, the deficiencies were corrected in a few hours, but the Government did not accept the buildings for several days. According to the Government, the buildings were accepted without unreasonable delay when these deficiencies had been corrected or substantially corrected.

We find that the record supports the Government's position. Upon review of the Government inspector's daily reports (which is the only evidence from

which specific conclusions can be drawn as to completion dates, final inspection dates and acceptance dates), we find the following:

| Building No. | Last work performed | Final inspection | Discrepancies corrected | Acceptance date |
|---|---|---|---|---|
| S-141 & S-152 ...... | 11/30/60 | 12/ 1/60 | (*) | 12/16/60 |
| S-142 & S-151 ...... | 12/19/60 | 12/19/60 | 12/20/60 | 12/21/60 |
| S-128 & S-129 ...... | 12/21/60 | 12/27/60 | 12/29/60 | 12/30/60 |
| S-125 & S-126 ...... | 12/30/60 | 1/ 3/61 | 1/ 4/61 | 1/ 6/61 |
| S-131 ............ | 1/10/61 | 1/11/61 | 1/12/61 | 1/12/61 |
| S-130 ............ | 1/16/61 | 1/17/61 | 1/23/61 | 1/24/61 |

* Building accepted before all deficiencies were corrected

———◆———

It is clear from the record that most of the buildings could have been accepted by the Government at an earlier date because in most instances the deficiencies that remained to be corrected were minor. We do not feel justified in holding, however, that the Government was contractually obligated to accept the buildings at an earlier date or that the Government's actions were unreasonable.

Plaintiff cites the testimony of plaintiff's president that on January 21 or 22, 1961, he insisted upon a meeting with the base commander of Westover Air Force Base concerning the failure of defendant to accept the buildings, and that at such a meeting held that day, the base commander asked the contracting officer if the buildings were ready for occupancy, the contracting officer replied affirmatively, and the base commander then directed that the buildings be accepted. As stated above, the last building was formally accepted on January 24, 1961.

The only other attack made by the plaintiff on the last above-quoted findings of the Board is plaintiff's assertion in its brief as follows:

In the matter of the acceptance of the buildings by the government, the Board found that the government could have accepted most of the buildings "at an earlier date" (Op. 17), but the Board did not feel that the government was unreasonable. This is another example of the many delays which the plaintiff suffered, the cumulative effect of which were to damage the plaintiff in excess of thirty-two thousand dollars ($32,000).

Referring to the schedule set forth in the last above-quoted findings of the Board, one might reasonably inquire what evidence in the Board's record shows that the last work in the buildings was performed at different times than the dates stated therein. If the Board's findings in that respect are supported by substantial evidence, it would seem to follow that final inspection and acceptance were reasonably diligent by perusal of the rest of the Board's schedule. Yet, plaintiff makes no attack upon such schedule, and without such, the Board's findings must be held to be final.

Near the end of its exhaustive decision, the Board states as follows:

In the preceding paragraphs we have discussed in considerable detail the evidence considered from the viewpoint of the individual causes of delay. We have not, however, overlooked the fact that the appellant's testimony was not primarily directed toward proving individual and separable causes of delay but, on the contrary, was directed toward the proposition that the cumulative effect of all of the delays was the disruption of the entire job. The appellant asserts, in effect, that 100 per cent of the overrun in the contract

time and 100 per cent of the overrun in costs were due solely to the Government delays.

Upon reviewing the record as a whole, we find that such a conclusion could not reasonably be reached on the basis of the record before us. On the contrary, the record would support a finding that the work, at least in part, was delayed and disrupted by causes other than those urged by the appellant. We refer specifically to testimony by a Government witness (not controverted by appellant) that the appellant was delayed by the plumbing subcontractor's failure to complete the rough plumbing on time due to a labor shortage (Tr. 155–156); to the testimony of appellant's superintendent that during the early stages of the project the appellant was unable to employ enough laborers to man all of the crews that had been anticipated (Tr. 343–345); and to the delay which would normally flow from changes ordered by the Government under the "Changes" article.

■■ After a careful review of the entire record of the Board, it is my conclusion that as found by the Board, and as related above, there were substantial delays caused by factors other than the alleged unreasonable delays of the defendant, that plaintiff pressed its claims before the Board on the theory that all extended contract performance time resulted from actionable fault of the defendant, and that plaintiff was entitled to recover all of its increased costs of performance, resulting from all delays. It is obvious that the evidence before the Board failed to establish the extent to which delays in performance were caused by any actionable acts or omissions of the defendant, and did not establish any basis for even approximating the extent of delays, if any, caused by defendant. Moreover, the evidence does not establish (except for the $150 allowed by the Board) the extent, if any, to which plaintiff's costs were increased by any actionable fault of the defendant, nor any basis for a reasonable approxi-

mation of such increased costs. Plaintiff is not entitled to recover. Wunderlich Contracting Co. v. United States, 173 Ct. Cl. 180, 192–199, 351 F.2d 956, 964–969 (1965), and numerous cases therein cited.

The record in this case fails to show whether or not the $150 award by the Board was paid to plaintiff, nor is there any allegation concerning payment or lack of payment of the same. It would seem that if not paid, administrative payment would yet be made upon plaintiff's application.

It is recommended that without prejudice to the administrative payment of the amount awarded to plaintiff by the Board, that plaintiff's motion for summary judgment be denied, that defendant's cross-motion for summary judgment be granted, and that plaintiff's petition be dismissed.