**ROUND PLACE, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 90–227C.

United States Court of Federal Claims.

Aug. 18, 1994.

James E. Pinkowski, Fairfax, VA, for plaintiff.

Joan M. Bernott, Washington, DC, with whom was David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., and Stuart M. Gerson, Asst. Atty. Gen., U.S. Dept. of Justice, for defendant. Daniel A. Bowen, U.S. Dept. of Agriculture, Temple, TX, of counsel.

## OPINION

SMITH, Chief Judge.

This matter is before the court on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. This matter is an appeal to the court, pursuant to the Wunderlich Act, 41 U.S.C. §§ 321–322 (1988), from a decision by the Agriculture Board of Contract Appeals (AGBCA or Board) concerning a construction contract. The contract involved the construction of a floodwater retaining structure

1. For a complete description of the facts *see* Findings of Fact, AGBCA No. 77–210–4, 1984

at the Lower Running Water Draw Watershed, Site 2, in Hale County, Texas, under the jurisdiction of the Soil Conservation Service, United States Department of Agriculture. Following careful consideration of the briefs and case law, and oral argument, the court must deny plaintiff's motion and grant defendant's motion.

## FACTS [1]

A firm fixed-price construction contract for a flood water retaining structure was awarded by the Soil Conservation Service, United States Department of Agriculture, to Round Place, Inc., on May 27, 1976. The contracting officer issued a final decision on October 26, 1977, denying four claims for additional compensation and a claim for remission of liquidated damages. This decision was then appealed to the AGBCA.

On March 12, 1980, the AGBCA conducted a trial at which plaintiff acted *pro se*. Plaintiff presented claims for: (1) a differing site condition; (2) changes and constructive changes to its contract due to the government's interpretation of contract specifications; (3) delay caused by adverse weather conditions justifying a time extension and remission of liquidated damages; (4) delays caused by the government due to construction operations necessitated by the government's interpretation of contract specifications; and (5) changes due to additional quantities of work ordered by the government in connection with de-watering and water diversion at the project. Each claim pertained to work performed only by plaintiff, the sole contractor on the project.

On March 14, 1984, the AGBCA denied plaintiff's claims in their entirety. The plaintiff filed a Motion for Reconsideration in April 1984, which was denied on August 23, 1984. The plaintiff appealed to this court on March 14, 1990, under the Wunderlich Act. Plaintiff contends that the Board's decision and findings are not supported by substantial evidence or are contrary to law. Defendant cross-moves for summary judgment.

WL 13263 (Mar. 14, 1984).

## DISCUSSION

This action involves Round Place's claim for expenses resulting from their five claims. This court must decide whether substantial evidence supports the AGBCA decision. Both parties agree that the Wunderlich Act principles apply to this case.

### Standard of Review [2]

In reviewing the Board's decision, this court does not make independent factual findings, but examines the sufficiency of the Board's findings. 41 U.S.C. § 321 (1988). The Wunderlich Act permits the court to determine whether the Board's legal determinations were erroneous. *Maitland Bros. Co. v. United States*, 20 Cl.Ct. 53, 60 (1990), *citing National Civil Ser. League v. United States*, 226 Ct.Cl. 478, 643 F.2d 768 (1981). See also *Koppers Co. v. United States*, 186 Ct.Cl. 142, 147, 405 F.2d 554, 557 (1968). The court may also determine whether the Board's factual findings are fraudulent, arbitrary, capricious, or unsupported by substantial evidence. *Id.* Plaintiff contends that the Board acted contrary to law and that their action was not supported by substantial evidence.

A plaintiff challenging the factual findings of a board faces a heavy burden of establishing that the findings are not supported by substantial evidence in the record. *Gulf Contracting, Inc. v. United States*, 23 Cl.Ct. 525, 528 (1991), *aff'd without op.*, 972 F.2d 1353 (Fed.Cir.1992). Although the court is not bound by a board's determinations of questions of law, careful consideration and great respect should be accorded to a board's interpretation of a contract's requirements. *Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed.Cir.1985).

### Nature of Plaintiff's Challenge

In order for plaintiff to prevail, it must specifically demonstrate which finding or findings this court should reject, identifying specifically "the facts and circumstances contained in the Board's record ... which make the Board's decision lacking in substantial evidence." *Jefferson Constr. Co. v. United States*, 177 Ct.Cl. 581, 589, 368 F.2d 247, 252 (1966). However, in the instant case plaintiff failed to address *any* specific findings and, therefore, the court cannot find that Board's decision lacked substantial evidence. Thus, the court accepts as correct all the Board's findings of fact. *Milmark Serv., Inc. v. United States*, 731 F.2d 855, 859 (Fed.Cir. 1984).

Plaintiff also argues that there was clear error of law. However, the court finds no indicia of such, as is explained more fully below. Although plaintiff cannot prevail because specific findings of fact were not contested, this court also looks at the merits of the specific claims.

### 1. Differing Site Condition Claim

Plaintiff argues that the contract drawings and test soil borings represented the condition of the soil at the project whereby work for the most part involved excavation and compaction of silty clay materials. However, plaintiff maintains that the conditions were 75% sand instead of silty clay therefore requiring plaintiff to change the construction operation and haul material from other areas in order to construct the dam. Plaintiff states that it needed to stockpile materials and had irregular work activities which increased the cost of performance and time of completion.

An express representation in a contract specification or drawing furnished by the government to the contractor depicting specific conditions on a site can result in Type 1 Differing Site Conditions, if other conditions are encountered during construction. *Fehlhaber Corp. v. United States*, 138 Ct.Cl. 571, 584, 151 F.Supp. 817, 825, *cert. den.*, 355 U.S. 877, 78 S.Ct. 141, 2 L.Ed.2d 108 (1957). This was held to be the case despite the fact that the government had stated that the specific data was informational only and that cavetory and exculpatory provisions were included to relieve the government of liability for such representations.

2. At oral argument plaintiff's counsel stressed that plaintiff acted *pro se* at the AGBCA hearing. Nevertheless, there is nothing that would require a *de novo* review on that basis alone. The record indicates that the Board made every attempt to facilitate the plaintiff acting *pro se*.

*Id.* 151 F.Supp. 817, 138 Ct.Cl. at 583–84. Plaintiff argues that the dispute as to what is indicated by the contract document is a question of law to be decided independently of the Board's decision. *Foster Constr. C.A. & William Bros. v. United States,* 193 Ct.Cl. 587, 435 F.2d 873 (1970). The AGBCA made a factual finding that the evidence revealed no differing site condition. The Board's finding is consistent with the contract.

The plaintiff failed to demonstrate that it encountered a subsurface or latent physical condition that differed materially from those indicated in the contract. *P.J. Maffei Bldg. Wrecking Corp. v. United States,* 732 F.2d 913, 916 (Fed.Cir.1984). Moreover, a contractor must consider all subsurface information made available to him, and not shut his "eyes to relevant data of this type." *United Contractors v. United States,* 177 Ct.Cl. 151, 368 F.2d 585, 596 (1966). The contractual record is replete with indications of sand at the project site and that the plaintiff's president had personal knowledge that the foundation contained sand. For example, plaintiff

> made a visual inspection of the site ... prior to bidding. ... The geological investigation report available to all bidders, states that "[a]lluvial and resilient soils are silty to very silty clays which contain variable amounts of sand. Silty sand lenses and pockets occur near the present stream channel and are thinner than the clay horizons."

Findings of Fact at 3, AGBCA No. 77–210–4, 1984 WL 13263 (Mar. 14, 1984).

Also, the contract drawings

> included the results of the test soil borings taken by the Government before issuance of the solicitation. ... The borings along the center of the dam set forth on Sheet 14 show the letters "CL" on the left side of the boring cross section and slightly smaller sized letters on the right side including "S," "Sl/.S," "V/.M–.S," etc. These letters are defined on Sheet 13 to mean:
> > CL—Clay with a liquid limit of 50 or less
> > S—Sand, sandy
> > Sl/.—slightly
> > V/.—very

*Id.* at 14. In fact the "S" legend, representing "Sand," is found throughout the contract drawings. Thus, the contract is consistent with the Board's finding that 75% of the soil consisted of sand. There is no showing of a differing site condition.

*2. Unusually Severe Weather Claim*

■ Plaintiff argued that during construction the winter weather was unusually and severely cold causing the ground to freeze for extended periods of time making contract performance more difficult and costly. The Administrative Judge rejected this finding based on the daily job records of the government inspector and because the plaintiff never submitted the 10 year weather history into evidence.

■ A contractor can demonstrate that the weather surpassed the normal average weather by examining the past 10 year weather patterns. *Bateson–Cheves Construc. Co.,* IBCA 52210–65, 67–2 BCA Section 6466; *Allied Contractor's, Inc.,* ASBCA 265, 1962 BCA Section 3501. However, the National Weather Service records were never put in evidence by plaintiff before the AGBCA, and there is no indication that the AGBCA refused to admit such evidence. There also is no *per se* rule which states that the 10 year weather pattern must be used, rather it is only one acceptable means for evaluating weather conditions. It was certainly not an error of law for the AGBCA to examine other weather data.

*3. Interpretation of Construction Specification 23A*

■ Plaintiff argues that Specification 23A is ambiguous and therefore the contract must be read in the light most favorable to the party who did not draft it. This is the well-established rule of *contra proferentem.* The rule requires that the court construe an ambiguity in favor of the non-drafting party if such an interpretation is reasonable. *See Randallstown Plaza Assoc. v. United States,* 13 Cl.Ct. 703 (1987). The AGBCA found no such ambiguity; the contract is clear that no frozen materials will be placed at the project. The court finds that interpretation to be

reasonable and even compelling. Even if the language were ambiguous, the AGBCA found the plaintiff's interpretation not reasonable.[3] This is a determination of the Board's and substantial evidence supports the Board's ruling.

4. *Removal of Water From Project and Diversion of Water Claim and Delay Claim*

 Plaintiff makes the same basic argument with Specification 11, pertaining to removal and diversion of water at the project, as it did with Specification 23A. It maintains that Specification 23A is ambiguous and, therefore, must be interpreted in its favor. Plaintiff also argues that the Administrative Judge failed to properly consider evidence in the delay claim. These two claims, however, are dependent on claims 1, 2, and 3. In order to find in the plaintiff's favor in the removal of water and delay claims the court would have had to have found for the plaintiff in claims 1, 2, and 3. The court, however, found no differing site condition, no unusually severe weather, and no contractual ambiguity. It is impossible to support the removal of water and delay claims without unusually severe weather and differing site conditions because these problems would not otherwise have occurred. Thus, there is no basis upon which to bring these two claims. The court finds no reversible error in the AGBCA's denial of these claims.

## CONCLUSION

Substantial evidence supports the AGBCA's decision. The Board correctly examined the evidence, testimony, and contract specifications. The Board's findings and conclusions are reasonable and show no error of law. Accordingly, this court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment. The clerk is hereby ordered to dismiss the case.

IT IS SO ORDERED.

---

3. The AGBCA held:
   testimony presented showed that such an interpretation is not consistent with acceptable engineering practices (Tr. 282, 284) and practices of the state (Tr. 282–283) and other Federal agencies (Tr. 283), and that the thawing requirement not only pertains to bonding, as does scarifying, but also to density. [Round Place] admitted that [it] knew of no government agency which allow the placement of fill on frozen embankments (Tr. 245–246). For these reasons, we are unable to conclude that the [Contracting Officer's] interpretation of the thawing specification was erroneous.