The ENTWISTLE COMPANY

v.

The UNITED STATES.

No. 385–80C.

United States Claims Court.

Aug. 28, 1984.

Fred Israel, Washington, D.C., attorney of record for plaintiff. Jay L. Cohen and Israel & Raley, Washington, D.C., of counsel.

Colvin W. Grannum, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., attorney of record for defendant. Martha A. Klein, Department of the Navy, Washington, D.C., of counsel.

## OPINION

LYDON, Judge:

This government contract case involves review, under the standards of the Wunderlich Act, 41 U.S.C. §§ 321, 322 (1976), of decisions by the Armed Services Board of Contract Appeals (Board). ASBCA Nos. 14918 and 15827, 75–2 BCA ¶ 11,420; 76–2 BCA ¶ 12,108. As part of these decisions in this case, the Board found the government liable for delay costs for 455 days. The Board, *inter alia*, awarded plaintiff $60,319.59 in interest expenses caused by the delay, but did not allow plaintiff any interest expense incurred after the filing of its appeal with the Board. Both parties have moved for summary judgment attacking selected portions of the Board decisions.

Plaintiff contends that the Board improperly disallowed its claim for post-appeal interest, and seeks to recover $864,145.49 in interest for the period during which its appeal in this case was before the Board, *i.e.*, January 20, 1970 to August 1976.[1] Defendant opposes plaintiff's motion and argues that plaintiff is not entitled to recover on its post-appeal interest claim. Moreover, defendant presents a counterclaim in its cross-motion for summary judgment contending that the Board improperly awarded plaintiff $60,319.59 in pre-award interest expense because plaintiff failed to establish the required direct relationship between the interest expense and the government caused delay.

After consideration of the submissions of the parties, and oral argument thereon, the court affirms the Board's decisions both with respect to its denial of plaintiff's post-appeal interest claim and its award to plaintiff of $60,319.59 in pre-appeal interest expense to which defendant objected and upon which defendant's counterclaim is based.

*Facts*

On November 10, 1966, plaintiff was awarded a contract (N00156–67–C–1425) by the Naval Air Engineering Center (NAEC) in Philadelphia, Pennsylvania. Under the terms of this contract, plaintiff was to manufacture, test, and deliver 6 Short Airfield Tactical System (SATS) catapults and various quantities of spare parts for these SATS catapults. This was a straight manufacturing contract which entailed no engineering development by plaintiff. The SATS catapults were part of a short airfield system which was designed to duplicate on land the process of launching and landing aircraft which was used on aircraft carriers.

The original contract price was $10,358,810.35 with a provision for a 5 percent prompt payment discount. The contract specified that the 6 catapult systems were to be delivered during the period July 1967 to September 1967. The contract also specified that the delivery of spare parts was to be completed by December 29, 1967. Thus, the original contract period was for 13 months and 19 days after award.

The performance of the contract was delayed by a series of 57 contract modifications, as well as by plaintiff having to make 164 Requests for Engineering Information (REIS) because of incomplete or incorrect drawings or specifications. As a result of these modifications and corrections, plaintiff's performance of the contract was delayed. The contract completion date was rescheduled to July 25, 1969. Thus, the extended delivery date of July 25, 1969, was almost 19 months longer than the original completion date of the project, December 27, 1967. Plaintiff claimed that 16 months of the 19-month delay was attributable to the government.

On January 20, 1970, plaintiff appealed a December 23, 1969, contracting officer's decision which denied plaintiff's claim for an equitable adjustment of $1,398,455.12 as compensation for additional costs plaintiff

---

1. Plaintiff sought interest from the date it filed its claim with the Board, January 20, 1970, and not from the date the claim was submitted to the contracting officer since its claim was not under the Contract Disputes Act (CDA), 41 U.S.C. § 611 (1982).

incurred on this contract. Plaintiff subsequently amended his claim on appeal to the Board and increased the claim to $2,097,084 plus $580,563 for post-appeal interest.[2] This $580,563 interest claim was for interest on plaintiff's equitable adjustment claim from the date plaintiff filed its appeal before the Board, January 20, 1970, until September 30, 1973.[3]

The Board found that of the 481 days of delay claimed by plaintiff, defendant was responsible for 455 days of delay and plaintiff was responsible for 26 days.[4] The Board allowed plaintiff a total recovery of $1,181,697.64, including $60,319.59 in pre-appeal interest expense on its claim. The Board, however, did not allow plaintiff any recovery for its post-appeal interest claim since the regulation relied on by plaintiff, ASPR § 7–104.82, was not effective at the time plaintiff entered into the contract at issue, and therefore there was no statute, regulation or contract provision authorizing the payment of post-appeal interest to plaintiff.[5] In awarding plaintiff pre-appeal interest, the Board reduced plaintiff's $87,479 interest claim to $60,319.59. The Board specifically found as a fact that this $60,319.59 amount in pre-appeal interest resulted from government-caused delay.

Plaintiff thereafter filed the present action seeking post-appeal interest of $580,563 for the period January 20, 1970, through September 30, 1973, plus an additional amount of $283,502.49 for additional post-appeal interest for the period October 1, 1973, to August 30, 1976.[6]

## II.

■ Plaintiff, in its summary judgment motion, seeks to overturn the Board's decisions denying its post-appeal interest claim. The general rule is that interest is not recoverable against the United States absent a statute or contract provision authorizing such payment. 28 U.S.C. § 2516(a) (1982); *Brookfield Constr. Co. v. United States*, 228 Ct.Cl. 551, 559, 661 F.2d 159, 165 (1981); *First National City Bank v. United States*, 212 Ct.Cl. 357, 371, 548 F.2d 928, 937 (1977). Plaintiff, in its motion for summary judgment, does not rely on any statute, regulation or contract provision for its post-appeal interest claim. At the time, the contract at issue was entered into, there was no statute, regulation or contract provision which authorized the payment of post-appeal interest on a contractor's claim. Therefore, plaintiff, having abandoned its ill-fated reliance on ASPR 7–104.82, now contends that post-appeal interest is includable as part of an equitable adjustment claim under the Court of Claims decision in *Bell v. United States*, 186 Ct.Cl. 189, 205–207, 404 F.2d 975, 984 (1968).[7]

2. Plaintiff subsequently consolidated another appeal, ASBCA No. 15827, with its original appeal, ASBCA No. 14918. Plaintiff received $58,834.16 in ASBCA 15827 in addition to the $1,171,697.64 it received in ASBCA No. 14918.

3. Plaintiff in its original claim before the Board grounded its post-appeal interest claim on Armed Services Procurement Regulation (ASPR) 7–104.82, 32 CFR § 7–104.82 (1973) which allowed interest from the date a contractor filed an appeal with the Board.

4. The Board issued two decisions in this case. In its first decision dated June 20, 1975, the Board through error allowed plaintiff only 332 days of delay and a total recovery of $700,739.33, including pre-appeal interest. *See* 75–2 BCA ¶ 11,420. After plaintiff filed a motion for reconsideration, the Board issued a second decision allowing plaintiff 455 days of delay and a total recovery of $1,171,697.64. *See* 76–2 BCA ¶ 12,108. In its motion for reconsideration,

plaintiff did not object to the Board's $60,319.53 for pre-appeal interest expense and thus the second decision let stand the original award of $60,319.53 for pre-appeal interest.

5. ASPR § 7–104.82 became effective in October 1972, while plaintiff's contract was entered into in November 1966, and completed on July 25, 1969.

6. August 31, 1976, was the date of the second Board decision in this case. The original ending date used by plaintiff in its post-appeal interest claim was September 30, 1973, a date which plaintiff arbitrarily used because the date of the Board's final decision was unknown at the time plaintiff made its claim.

7. In its motion for reconsideration before the Board, plaintiff abandoned ASPR § 7–104.82 as a basis for its post-appeal interest claim and argued that as a matter of equity plaintiff was

In *Bell v. United States, supra,* the Court of Claims held that interest expense incurred as a result of financing a government directed change under the changes clause was recoverable as part of an equitable adjustment under the changes clause. The issue in *Bell* involved interest expense incurred during the actual performance of the additional government-directed work. *Bell v. United States, supra,* 186 Ct.Cl. at 206, 404 F.2d at 984. Plaintiff contends that *Bell v. United States, supra,* should be extended to interest incurred not only during the actual performance of the additional government-directed work, but also interest which addresses the period when a contractor's claim is on appeal before the Board. Plaintiff does not cite any cases so extending the holding of *Bell v. United States, supra.* Instead, plaintiff's claim essentially rests on the argument that equity and justice require such an extension.[8] See in this regard *Bell v. United States, supra,* 186 Ct.Cl. at 206, 404 F.2d at 984, citing *Komatsu Mfg. Co. v. United States,* 132 Ct.Cl. 314, 131 F.Supp. 949 (1955) and *Ramsey v. United States,* 121 Ct.Cl. 426, 431–433, 101 F.Supp. 353, 355–357 (1951), *cert. denied,* 343 U.S. 977, 72 S.Ct. 1072, 96 L.Ed. 1369 (1952).

Plaintiff's post-appeal interest claim is essentially a claim for interest resulting from the government's delay in paying plaintiff the amount it claimed as an equitable adjustment rather than a claim for an expense incurred in order to finance construction work. In fact, plaintiff itself recognized this fact in its original presentation of the post-appeal interest claim before the Board where plaintiff based its post-appeal interest claim on Armed Services Procurement Regulation 7–104.82, 32 CFR § 7–104.82 (1973). ASPR 7–104.82 provided for payment of interest to the contractor while the contractor's claim is on appeal to the Board from a decision of the contracting officer. The broad language of ASPR § 7–104.82 encompassing all contractor claims appealed to the Board makes it evident that the purpose of ASPR § 7–104.82 was to compensate a contractor for delay by the government in paying rightful contractor claims, not to reimburse a contractor for actual financing expenses paid to a third party lender for loans resulting from delay or additional work caused by the government.[9] The fact that the interest rate used in ASPR § 7–104.82 is one set by the renegotiation board and not one actually paid by the contractor to a third party lender further supports this construction of the purpose of ASPR § 7–104.82. Plaintiff's reliance on ASPR § 7–104.82 in its initial presentation of its claim to the Board and its use of interest rates set by the renegotiation board in calculating its interest amount clearly demonstrates that plain-

entitled post-appeal interest. The Board in its second decision again rejected plaintiff's post-appeal interest claim as not within the scope of any statute, regulation, or contract provision allowing such an interest claim. *See* 76–2 BCA ¶ 12,108.

8. Plaintiff cites an ASBCA case, *Douglas Corp.* ASBCA No. 14998, 70–1 BCA ¶ 8338, in support of this proposition. The *Douglas Corp.* case, however, involved a Termination for Convenience settlement, and, in any event, other Board precedents involving equitable adjustment claims demonstrates the Board's adherence to the rule that interest is no longer a cost of performing the contract upon the issuance of the contracting officer's decision, as long as actual work performance has ceased. *Ingalls Shipbuilding Div., Litton Systems, Inc.,* ASBCA Nos. 17579, 78–1 BCA ¶ 13,038; *Keco Indus., Inc.,* ASBCA No. 15131, 72–1 BCA ¶ 9262 at 42,941.

9. ASPR § 7–104.82 reads as follows:

"(a) If an appeal is filed by the Contractor from a final decision of the Contracting Officer under the Disputes clause of this contract, denying a claim arising under the contract, simple interest on the amount of the claim finally determined owed by the Government shall be payable to the Contractor. Such interest shall be at the rate of six percent (6%) per annum from the date the Contractor furnishes to the Contracting Officer his written appeal pursuant to the Disputes clause of this contract, to the date of (i) a final judgment by a court of competent jurisdiction, or (ii) mailing to the Contractor of a supplemental agreement for execution either confirming completed negotiations between the parties or carrying out a decision of a Board of Contract Appeals."

tiff's claim is for interest lost as a result of late payment by the government. Such an interest claim for late payment is barred by 28 U.S.C. § 2516(a) (1982) and outside the scope of *Bell v. United States, supra. Framlau Corp. v. United States,* 215 Ct.Cl. 185, 197, 198, 568 F.2d 687, 694 (1977). *See Mar-Pak Corp. v. United States,* 203 Ct.Cl. 718, 720 (1973).

■ In *Monroe M. Tapper & Assoc. v. United States,* 222 Ct.Cl. 34, 611 F.2d 354 (1979), a case decided well after *Bell v. United States, supra,* the Court of Claims dealt with a suit for interest on a claim. In *Monroe M. Tapper* the contractor sought interest on the money used to finance government-directed work for which the contractor had received an equitable adjustment. In disallowing the contractor's claim in *Monroe M. Tapper* the court stated:

> Admittedly, the prohibition against payment of interest may have harsh results. This unfairness was eliminated in most situations long ago by changes in procurement regulations and now by the Contract Disputes Act. Unfortunately, plaintiff in this case is unable to benefit from these developments and the old rule prohibiting the payment of interest on claims against the Government dictates the result here. [222 Ct.Cl. at 42, 611 F.2d 354.]

Plaintiff, here, like the contractor in *Monroe M. Tapper,* claims the interest it seeks flows from loans used to finance government-directed work. The administrative record indicates that most of the post-appeal interest sought by plaintiff was not an expense which plaintiff had to pay to a third party. The administrative record discloses that plaintiff had outstanding loans from third parties only from January 20, 1970, to June 30, 1971. Indeed, plain-

tiff computed its post-appeal interest amount beyond June 30, 1971, by applying the rate of interest set by the Renegotiation Board to the total amount of its outstanding claim and not by the calculation of some actual amount scheduled to be paid a third-party lender. The record also indicates that plaintiff's interest expenses on the additional cost incurred decreased significantly from November 1966 to January 1970. *See* 75–2 BCA ¶ 11,420, p. 54,378. It is clear contract performance was completed by January 1970. Thus, it seems clear plaintiff is seeking interest on the amount it claimed as an equitable adjustment for government-caused delay. Interestingly, the Board, in its second decision, 76–2 BCA ¶ 12,108, p. 58,167, noted that "[a]ppellants' efforts in changing the label of the claim from 'Interest Due on Claim Since Filing of Appeal,' bottomed in its post-hearing brief (p. 178) on ASPR 7–104–82, to 'Post-Appeal Interest as a reimbursement of Actual Financing Expense' does not change the nature of the claim, which still is for interest on monies owed by the Government." *See Ramsey v. United States, supra,* 121 Ct.Cl. at 432, 101 F.Supp. at 356.[10] To the extent that plaintiff is claiming interest actually paid to a third-party lender, this interest ceased being a cost of performance at the time the contracting officer's decision was issued and became a cost resulting from delayed payment. *See Keco Industries,* ASBCA 15131, 72–1 BCA ¶ 9262, p. 42,941. Just as the contractor in the *Monroe M. Tapper* case, *supra,* was unable to recover interest on the money used to finance additional work directed by the government, so too, plaintiff is unable to recover post-appeal interest on its claim as part of an equitable adjustment award.

Plaintiff in its brief insists that the allowance of post-appeal interest as part of an equitable adjustment is only fair and equi-

---

**10.** Plaintiff argues that the issue in this case involving an award of post-appeal interest is a novel issue for this court. This argument is based on the fact that plaintiff was not able to find a court case allowing post-appeal interest. Indeed, if this case involved a claim for post-appeal interest expense resulting from additional financing caused by government delay, this is-

sue may be one of first impression. However, the administrative record and plaintiff's briefs indicate that this post-appeal interest claim is one based on plaintiff's equitable adjustment award and not on additional financing expenses incurred. Such a claim is clearly controlled by case law precedent and thus presents no novel issue to this court.

table because a contractor's expense does not suddenly stop as of the time of appeal but continues while the appeal process is taking place. But as the Court of Claims stated in *Economy Plumbing & Heating Co. v. United States*, 200 Ct.Cl. 31, 46, 470 F.2d 585, 594 (1972), "equity and justice is on the side of the plaintiffs, but unfortunately interest cannot be collected from the government on that basis." Moreover, the administrative record as mentioned above, suggests that plaintiff actually paid interest on borrowed money only until June 30, 1971, and thus plaintiff had no actual interest expense after this period despite plaintiff's characterization of its claim involving the period January 20, 1970, to August 31, 1976, as one for interest expense. *See generally Ramsey v. United States, supra*, 121 Ct.Cl. at 432–433, 101 F.Supp. at 356. In any event, like the contractor in *Economy Plumbing, supra*, plaintiff's resort to an argument based upon equity and justice is to no avail absent a statute, regulation or contract provision authorizing the payment of interest. *See Monroe M. Tapper v. United States, supra.*

▮ A further indication that plaintiff is barred by 28 U.S.C. § 2516(a) from recovering post-appeal interest is provided by the enactment of the interest provision of the Contract Disputes Act (CDA), 41 U.S.C. § 611 (1982). One primary reason for the enactment of the interest provision of the CDA was that Congress "recognized that the cost of money necessary to finance additional or disputed work while pursuing an administrative remedy (often referred to as interest) was a legitimate cost for which the contractor should be compensated." *Brookfield Constr. Co. v. United States, supra*, 228 Ct.Cl. at 568, 661 F.2d at 170, citing S.Rep. No. 95–1118, 95th Cong., 2d Sess. 32, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5235, 5266. Clearly, if post-appeal interest were recoverable as

part of an equitable adjustment, the enactment of the CDA interest provision was unnecessary. The fact that Congress felt the necessity of enacting the CDA interest provision to overcome the bar imposed by 28 U.S.C. § 2516(a) (1976), provides persuasive evidence that 28 U.S.C. § 2516(a) prior to the CDA prohibited the recovery of post-appeal interest as part of an equitable adjustment absent a contract provision to the contrary.[11]

It is concluded that plaintiff is not entitled to post-appeal interest and plaintiff's motion for summary judgment on this issue is denied.

### III.

Defendant in its cross-motion for summary judgment, seeks by counterclaim, to overturn the Board's factual finding that plaintiff incurred $60,317.39 in pre-appeal interest expense as a direct result of government-caused delay. Specifically, defendant maintains that the Board failed to follow relevant Court of Claims precedents in that it did not require a sufficiently direct tracing of the interest expense incurred as a result of the government-caused delay in determining that $60,319.59 in interest expense was traceable to government-caused delay.

▮ Defendant bears a heavy burden in attempting to overturn the Board's factual findings. The scope of this court's review of the Board's factual findings is narrow and limited. The Board's factual findings are disturbed only if they are arbitrary, capricious or if there is no substantial evidence in the record to support the Board's factual conclusion. *Koppers Co. v. United States*, 186 Ct.Cl. 142, 148, 405 F.2d 554, 557 (1968); *Chemithon Corp. v. United States*, 1 Cl.Ct. 747, 750 (1983).

In this case, the Board specifically found as a fact that prior to plaintiff's appeal to

---

11. As noted earlier, ASPR 7–104.82, which was effective in 1972, included by regulation a contract clause in certain government contracts which allowed recovery of post-appeal interest from the date the appeal was filed with the Board. This was a pre-CDA attempt to allow contractor's post-appeal interest on their claims, although it was not as far reaching an effort as the CDA, since the CDA allows interest from the date the claim is presented to the contracting officer. *See* 41 U.S.C. §§ 605(a), 611 (1982).

the Board, plaintiff incurred interest expenses of $60,319.59 which resulted from government-caused delay. The crux of defendant's attack on this finding is the assertion that there is no clear evidence in the administrative record which demonstrates that this $60,319.59 is directly traceable to the government-caused delay. Defendant argues that Court of Claims case law precedents involving interest as a recoverable expense under an equitable adjustment requires a direct relationship between the interest expense and the government-caused delay. *See Dravo Corp. v. United States*, 219 Ct.Cl. 416, 424–427, 594 F.2d 842, 846–847 (1979); *Framlau Corp. v. United States, supra*, 215 Ct.Cl. at 197–198, 568 F.2d at 694. Defendant further maintains that the Board did not have sufficient evidence to support its finding that $60,319.59 was an interest expense directly resulting from government-caused delay as required by this case law precedent. Actually in the *Dravo Corp.* case, *supra*, the Court of Claims made it clear it "still holds to the view that direct tracing to a specific loan *or necessity for increased borrowing is still required to be proven* in order for a contractor to recover for interest costs under an equitable adjustment theory." (emphasis supplied) 219 Ct.Cl. at 427, 594 F.2d at 847. In the case at bar, even if one were to assume that direct tracing to a particular loan was not specific enough in the Board decision, said decision established clearly the necessity for increased borrowing due to government-caused delay.

■ Defendant's argument disregards the weight accorded the Board's factual findings. The Board's factual findings are presumptively correct. *Jefferson Constr. Co. v. United States*, 177 Ct.Cl. 581, 589, 368 F.2d 247, 252 (1966); *Volentine & Littleton v. United States*, 136 Ct.Cl. 638, 643, 145 F.Supp. 952, 954 (1956). Defendant essentially attempts to shift to plaintiff the burden of pointing out the evidence in the record to support the Board's finding that $60,319.59 in interest expenses is traceable to the government-caused delay. On the contrary it is defendant's burden to establish the fact that the record does not support the Board's finding. *Sundstrand Turbo v. United States*, 182 Ct.Cl. 31, 60, 389 F.2d 406, 422–423 (1968). Defendant cannot successfully challenge the Board's findings by broad and conclusionary statements that the Board's findings are unsupported by substantial evidence; rather, defendant must specify the particular facts and circumstances in the record which demonstrate that the Board's decision is lacking in substantial evidence. *Jefferson Constr. Co. v. United States, supra*, 177 Ct.Cl. at 589, 368 F.2d at 252. *See Sundstrand Turbo v. United States, supra.*

■ Defendant has failed to discharge sufficiently its burden to specify the specific facts and circumstances in the record which demonstrate the fact that the Board's decision is not supported by substantial evidence. Defendant's objection to the Board's finding of $60,319.59 in pre-appeal interest expenses seems to be based primarily upon the method the Board used to determine plaintiff's excess borrowing costs, *i.e.*, interest, which were attributable to the government-caused delay. The method the Board used to determine this excess borrowing cost was to first determine plaintiff's normal borrowing level. To determine this normal borrowing level, the Board calculated the average month's amount borrowed prior to the contract and the average monthly amount borrowed during the first 5 months of the contract. The Board used the average monthly amount borrowed during this basis period, *i.e.*, prior to contract performance and for the first 5 months of contract performance, as plaintiff's normal borrowing level. The Board then used this normal borrowing level as the yardstick by which to determine how much excess borrowing plaintiff was required to do during the course of this contract. Essentially, the Board determined that the excess borrowing above plaintiff's normal borrowing levels was the result of government-caused delay and the interest on this excess borrowing was attributable to the government. Such a finding is simply supported by the record in this case. Further, the method used by the Board

was based on a change in borrowing brought on by the delay. Such a method for interest determination has been approved by the Court of Claims. *See S.S. Silberblatt, Inc. v. United States,* 3 Cl.Ct. 644, 645 n. 1 and text (1983).

It seems clear that the Board made allowance for all delay not attributable to the government including the 26 days for which the Board found plaintiff responsible. Plaintiff sought $87,479 in interest expenses, but the Board awarded plaintiff $60,319.54. It is reasonable to conclude that the Board accounted for those periods of delay for which the government was not responsible and adjusted plaintiff's pre-appeal interest claim accordingly. More importantly, defendant does not deny that the government was responsible for the necessity for increased borrowing and thus having established this fact, the Board's allowance of pre-appeal interest was correct. *See Dravo v. United States, supra,* 219 Ct.Cl. at 427, 594 F.2d at 847. The method the Board utilized to compute the interest was, under the circumstances, reasonable.

 As indicated above, the Court of Claims explicitly recognized that if a contractor can demonstrate an increase in the contractor's regular course of borrowing which is directly attributable to the government-caused delay on additional work performance, the contractor is entitled to recover the additional interest expense resulting from this increased borrowing. *Dravo Corp. v. United States, supra,* 219 Ct.Cl. at 426, 594 F.2d at 847; *Singer Co., Librascope Division v. United States,* 215 Ct.Cl. 281, 322, 323, 568 F.2d 695, 718, 719 (1977). This is precisely what plaintiff has done in this case. Plaintiff demonstrated an increase in his regular course of borrowing and demonstrated to the Board's satisfaction that this increased borrowing was directly attributable to the government-caused delay in contract performance. Defendant has pointed to nothing in the administrative record which demonstrates

that this finding by the Board was unreasonable or not supported by the totality of the record before the Board. Indeed, given the fact that the government caused over 15 months of the 16 month delay period claimed by plaintiff, it is clear that the Board's factual findings are on sound footing. Therefore, the court concludes that the Board's finding that the $60,319.59 pre-appeal interest expense resulted from the necessity for increased borrowing brought about by government-caused delay was supported by substantial evidence and was in accord with applicable case law precedents and otherwise reasonable, rational and proper. *See S.S. Silberblatt, Inc. v. United States,* 228 Ct.Cl. 729, 731 (1981).

Defendant's motion for summary judgment is therefore denied.[12]

## IV.

For reasons discussed above, the court affirms the Board's decision. Accordingly, plaintiff's motion for summary judgment is denied, with plaintiff's complaint to be dismissed. In addition, defendant's cross-motion for summary judgment is denied with its counterclaim to be dismissed.

---

12. Having concluded that defendant's counterclaim lacks merit and is therefore to be dismissed, it is not necessary to consider plaintiff's additional argument that said counterclaim is barred by the doctrine of accord and satisfaction.