**GEVYN CONSTRUCTION CORPORATION,**
**Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 158–74.

United States Claims Court.

Nov. 28, 1986.

---

Leslie A. Hynes, New York City, for plaintiff; Robert J. Gogick, New York City, and Robert J. Stern, Mamaroneck, N.Y., of counsel.

George M. Beasley, III, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant; Raymond McCullock, Corps of Engineers, of counsel.

## ORDER

MOODY R. TIDWELL, III, Judge:

This construction contract case is before the court on cross-motions for summary judgement. Plaintiff, Gevyn Construction Company, contracted with defendant for the rehabilitation of the Boston Veterans Administration Hospital and subcontracted to Potomac Metal Products, Inc. (Potomac Metal) a portion of the work. Gevyn seeks review, in accordance with the standards of the Wunderlich Act, 41 U.S.C. §§ 321, 322 (1982), of a decision of the Army Corps of Engineers Board of Contract Appeals (ENGBCA) which denied both Gevyn's claim and the claim that Gevyn made on behalf of its subcontractor Potomac Metal.

Gevyn's claim is for imputed interest at six percent on funds it invested in the project as a result of changes in the contract made by the government. Only questions of law are involved in Gevyn's claim, and the court finds that the ENGBCA decision is correct as a matter of law and should be affirmed. Potomac Metal's claim is for alleged actual interest expense incurred as a result of government caused changes in the contract. Only questions of fact are involved in Potomac Metal's claim and the court finds that the ENGBCA's findings are supported by substantial evidence and, therefore, are entitled to finality.

## FACTS

The Gevyn contract, originally in the amount of $4,134,625.00 was made on June 28, 1963, and called for replacing a brick wall with a metal curtain wall and general rehabilitation of a Veterans Administration hospital building. On July 18, 1963, Gevyn entered into a subcontract with Potomac Metal, in the original amount of $1,035,-000.00, for a large portion of the contract work. A number of problems were encountered by both Gevyn and its subcontractors, principally Potomac Metal, during performance of the contract. However, the contract work was substantially completed December 1, 1965 and was accepted by the Government on February 26, 1967.

In November of 1967, Gevyn filed a consolidated claim with the contracting officer, under the provisions of its contract, for extra expense incurred due to government

caused changes and delays in the contract. The total amount claimed by Gevyn was $1,799,668.72, of which $1,095,583.65 was on behalf of Potomac Metal. The contracting officer denied the full claim on March 10, 1969, and Gevyn appealed to the ENGBCA, which subsequently upheld the decision of the contracting officer. Gevyn then filed a petition in the Court of Claims seeking Wunderlich Act review of the ENGBCA decision. The Court of Claims held in Gevyn's favor on issues of changed condition, suspension, delay or interruption of the work, and acceleration. Trial Division case no. 158–74, opinion filed December 30, 1977. The Court of Claims remanded the case to the contracting officer with instructions to negotiate an equitable adjustment on those claims where the court had found defendant liable. The total payment made by the Government under the resulting equitable adjustment was $1,150,-000.00, of which the government attributed $748,935.00 to Potomac Metal, and $401,-065.00 to Gevyn.

In the equitable adjustment, Gevyn reserved the right to pursue its claims for the cost of financing the extra work, labor, labor services, and equipment included in the equitable adjustment. On March 10, 1969, the contracting officer issued a final decision denying the interest expense claims. Gevyn appealed to the ENGBCA a few days thereafter. The ENGBCA again upheld the contracting officer and denied Gevyn's interest expense claim. *Gevyn*, ENGBCA 3031, 83–1 BCA ¶ 16,428. Gevyn then petitioned this court for the second time for review of the ENGBCA decision.

## DISCUSSION

The present case comes before this court on Cross-Motions for Summary Judgment. Summary judgment is appropriate in this case because there are no genuine issues of material fact in dispute and judgment is appropriate as a matter of law. *South*

*Louisiana Grain Services, Inc. v. United States*, 1 Cl.Ct. 281, 289 (1982).

### Gevyn's Claim

■ Gevyn asserts that the equity capital it used to fund changed work should be assigned a value, in the nature of imputed interest, which it seeks to recover in an equitable adjustment under the provisions of its contract. In *Bell v. United States*, 186 Ct.Cl. 189, 404 F.2d 975 (1968), this court held that 28 U.S.C. § 2516(a) (1982), which generally prohibits the award of interest against the government, is not a bar to the award of actual interest costs as part of an equitable adjustment under the provisions of a fixed-price government contract.* *Bell*, 186 Ct.Cl. at 205–06, 404 F.2d at 984. However, the court requires that a contractor actually pay the interest in order to allow recovery. *Framlau Corp. v. United States*, 215 Ct.Cl. 185, 197, 568 F.2d 687, 694 (1977) (citing *Bell v. United States*, 186 Ct.Cl. 189, 404 F.2d 975 (1968)).

In *Framlau*, the court specifically addressed the issue of whether imputed interest on equity capital used to finance extra work caused by the government was awardable as part of an equitable adjustment. The court determined no recovery was allowable where only equity capital was used because "the cost to the contractor of borrowing capital is clearly determinable, while the [imputed interest value] to him of the use of equity capital is not so readily ascertainable." *Framlau*, 215 Ct.Cl. at 199, 568 F.2d at 695.

Under a Wunderlich Act review of the ENGBCA decision, this court is not bound by the ENGBCA's determination of questions of law, however such determinations should be given careful consideration by the court. *Raytheon Co. v. United States*, 2 Cl.Ct. 763, 767 (1983), *aff'd*, 730 F.2d 1470 (1984); *Laka Tool & Stamping Co. v. United States*, 7 Cl.Ct. 213, 216 (1984). The ENGBCA found that at all times Gevyn was in possession of sufficient funds to finance changed work. Moreover, Gevyn

---

* It is undisputed that plaintiffs' claims are not reviewable under the Contract Disputes Act because the claims were not pending before the contracting officer after the effective date of the Act (March 1, 1979).

does not contend it was forced to borrow in order to finance changed work. Thus, the ENGBCA, noting this court's rejection in *Framlau*, 215 Ct.Cl. 185, 568 F.2d 687, of the imputed interest theory of recovery advocated by Gevyn, denied Gevyn's claim. The court concludes that the ENGBCA correctly determined that Gevyn is not entitled to recover imputed interest on equity capital used to finance changed work, and its decision as to Gevyn's claim should therefore be upheld.

### Potomac Metal's Claim

■ Potomac Metal seeks to recover interest expense incurred on bank borrowings made necessary by Government caused changes in the contract. As previously indicated "recovery of interest paid on borrowings to finance changed work" as part of an equitable adjustment is not barred by 28 U.S.C. § 2516(a) (1982). *Dravo Corp. v. United States*, 219 Ct.Cl. 416, 424, 594 F.2d 842, 846 (1979) (citing *Bell*, 186 Ct.Cl. at 205–06, 404 F.2d at 984). In *Dravo*, however, the court required that either a "direct tracing [of changed work] to a specific loan" or a "necessity for increased borrowing," resulting from the extra work or delay caused by the government, be shown in order to allow recovery. *Dravo*, 219 Ct.Cl. at 427, 594 F.2d at 847. Potomac Metal does not contend that expenditures for changed work were directly traceable to specific loans and, in fact, admits such a tracing would be impossible in this instance. Potomac Metal's claim is that the ENGBCA finding, that Potomac Metal had failed to prove a necessity for increased borrowing directly attributable to the government, is not supported by substantial evidence. The court is not convinced.

Potomac Metal, challenging the factual findings of the ENGBCA, faces a heavy burden. In the court's review of this case, "the Board's factual findings are disturbed only if they are arbitrary, capricious or if there is no substantial evidence in the record to support the Board's factual conclusion." *Entwistle Co. v. United States*, 6 Cl.Ct. 281, 286 (1984) (citing *Koppers Co.*

*v. United States*, 186 Ct.Cl. 142, 148, 405 F.2d 554, 557 (1968)). "This court in reviewing the factual findings of the Board must accept the findings as final and conclusive even if the court would not have reached the same findings or conclusions." *Sperry Corp. v. United States*, 9 Cl.Ct. 488, 493 (1986). Potomac Metal may not shift to defendant the burden of pointing out the evidence in the record to support the ENGBCA's findings. On the contrary, it is Potomac Metal's burden here to establish the fact that the record does not support the findings. *Sundstrand Turbo v. United States*, 182 Ct.Cl. 31, 60, 389 F.2d 406, 422–23 (1968). Furthermore, Potomac Metal "cannot successfully challenge the [ENGBCA's] findings by broad and conclusionary statements that the [ENGBCA's] findings are unsupported by substantial evidence; rather, [Potomac Metal] must specify the particular facts and circumstances in the record which demonstrate that the [ENGBCA's] decision is lacking in substantial evidence." *Entwistle*, 6 Cl.Ct. at 287 (citing *Jefferson Construction Co. v. United States*, 177 Ct.Cl. 581, 589, 368 F.2d 247, 252 (1966).

The ENGBCA initially determined that the interest expense Potomac Metal incurred, if any, was actually that of its close affiliate Potomac Iron. Funds were borrowed by Potomac Iron and transferred to Potomac Metal on an informal basis because Potomac Metal had no line of credit which would permit it to borrow. *Gevyn*, ENGBCA 3031, 83–1 BCA ¶ 16,428. Thus, the ENGBCA found that the two companies were essentially one, at least for the purpose of this litigation. Defendant did not challenge this finding.

The ENGBCA found that from a base of $500,000.00 in December of 1963, when the project began, that "[i]n the first four months of 1965, Potomac Iron's outstanding [loan] balance grew by nearly $400,-000.00." From this the ENGBCA found an apparent need for increased borrowing by Potomac Iron on behalf of Potomac Metal. However, the ENGBCA also found that Gevyn wrongfully withheld funds from Po-

tomac Metal during this period. The ENGBCA found that Potomac Metal failed to prove that the increased borrowing was attributable to the Government caused changes in the contract, *Gevyn*, ENGBCA 3031, 83–1 BCA ¶ 16,428 at 81,733, and noted that the timing of Potomac Iron's increase in borrowing corresponded with Gevyn's withholding of payments under its subcontract. From that the ENGBCA found that the increased borrowing was made necessary by Gevyn's withholding rather than by government caused changes in the contract. The Board stated that "that the need for borrowings by Potomac Iron in early 1965 is traceable to excessive withholding of contract earnings by Gevyn from Potomac Metal." *Id.* As a result, the ENGBCA concluded that Potomac Metal's claim did not warrant recovery. Potomac Metal challenged the ENGBCA finding by asserting that the ENGBCA's findings of fact were not supported by substantial evidence. In the instant case, the ENGBCA clearly gave credence to a series of correspondence between Gevyn and Potomac Metal which strongly indicated a dispute between the two parties as to payments made under the subcontract. *Gevyn*, ENGBCA 3031, 83–1 BCA ¶ 16,428 (findings Nos. 18–27). The court is of the opinion that this correspondence constituted substantial evidence supporting the ENGBCA's finding that Gevyn wrongfully withheld payments from Potomac Metal, thereby triggering its increase in borrowing.

While Potomac Metal offers the court an appealing, though overly simplified, mathematical scenario which, not surprisingly, points to the conclusion that Gevyn was not the cause of its borrowing, Potomac Metal has failed to sufficiently discharge its burden to identify the specific circumstances which demonstrate that the ENGBCA's finding was not supported by substantial evidence. Potomac Metal's "simple arithmetic," which offers no temporal correlation to the evidence, falls well short of challenging the exhaustive month-by-month analysis done by the ENGBCA which utilized the correspondence between the par-

ties and other evidence such as the Government's estimate of the equitable adjustment. Furthermore, the possibility that the two parties may draw different conclusions from the same evidence does not indicate that the Board's findings are not supported by substantial evidence. *See NLRB v. Nevada Consolidated Copper Corp.,* 316 U.S. 105, 106, 62 S.Ct. 960, 961, 86 L.Ed. 1305 (1942). The court finds the record offers substantial evidence for the finding of the ENGBCA that Potomac Metal failed to show a necessity for increased borrowing directly attributable to Government caused changes in its contract. This finding is therefore entitled to finality.

### CONCLUSION

The court concludes that the ENGBCA decision as to both Gevyn's claim and that of its subcontractor Potomac Metal are entitled to finality under the standard of review set forth by the Wunderlich Act, 41 U.S.C. §§ 321, 322 (1982). Accordingly, the court grants Defendant's Cross-Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment. The clerk of the court is directed to dismiss the complaint.